**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **AMERGIN RAIL 2023-1, LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:25-CV-00568** |
| | ) | |
| **INDIANA HARBOR BELT RAILROAD** | ) | |
| **COMPANY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT INDIANA HARBOR BELT**
**RAILROAD COMPANY'S MOTION TO DISMISS AND STRIKE**

## INTRODUCTION

Plaintiff Amergin Rail 2023-1 ("Plaintiff" or "Amergin") wrongfully accuses that

Defendant Indiana Harbor Belt Railroad Company ("Defendant" or "IHB") breached a lease

agreement for decades-old railcars and asserts a breach of contract claim against IHB. This federal

court, however, cannot hear Plaintiff's claims because Plaintiff fails to follow established Seventh

Circuit precedent to demonstrate the existence of diversity jurisdiction, *and* because Plaintiff is not

a party to the lease agreement that fundamentally underpins its claims, and therefore lacks

standing.

Even if Plaintiff could overcome these threshold Constitutional impediments, it lacks any

legal basis to seek recovery outside of the alleged contract. Yet the Complaint repackages and

relabels its breach of contract claim four more times, piling on superfluous claims and reciting

duplicative causes of action which seek identical damages—including claims that are not

recognized causes of action at all. No matter how many times Plaintiff repeats its views, it cannot

convert this breach of contract lawsuit into anything else. Plaintiff's restated breach of contract

claims fail because:

*First*, the alleged contract would provide Plaintiff's sole avenue to seek recovery for an alleged breach of that contract, so its tort and fraud claims fail under Illinois' *Moorman* (economic loss) doctrine.

*Second*, Plaintiff tries to convert a remedy provision and an affirmative defense each into a cause of action. But Plaintiff cannot create claims. These purported causes of action should be dismissed or stricken.

*Third*, Plaintiff attempts to allege an unjust enrichment claim "in the alternative," but fails to make actual "alternative" arguments; accordingly this claim should be dismissed.

*Fourth*, Plaintiff's repackaged contract claims fail by their very virtue of being duplicative. Courts do not allow parties to inject inefficiencies and redundancies into litigation by repeating the same allegations over and over under different headings. All claims but the true breach of contract claim should be dismissed as duplicative.

*Finally*, Plaintiff's allegations sounding in fraud, including its intentional misrepresentation claim and fraud-based breach of contract allegations, also fail because they are subject to, but fail to satisfy, the heightened pleading standard under Federal Rule of Civil Procedure 9(b).[1]

---

[1] IHB has not filed a responsive pleading and is not required to do so at this time because "the time for filing a responsive pleading is tolled during the pendency of a Rule 12 motion." *Ello v. Brinton*, No. 14-cv-299, 2015 WL 7016462, at *4 (N.D. Ind. Nov. 10, 2015), citing Fed. R. Civ. P. 12(a)(1). This is true whether the defendant seeks complete or partial dismissal. *Id.*; see also *McNeal v. McLean Cty. Bd.,* No. 20-cv-1413, 2021 WL 5856139, at *3 (C.D. Ill. Dec. 9, 2021). ("This Motion also raises the question of whether a partial motion to dismiss under Federal Rule of Civil Procedure 12(b) tolls a party's deadline to respond to a complaint. District courts in this circuit have repeatedly held that it does. The Court agrees that a partial motion to dismiss tolls the time within which a defendant must answer with respect to the claims not challenged in the motion.") (internal quotation marks and citations omitted); *Richter v. Corp. Fin. Assocs., LLC,* No. 06-cv-1623, 2007 WL 1164649, at *2 (S.D. Ind. Apr. 19, 2007) ("[A] partial motion to dismiss tolls the time within which a defendant must answer with respect to the claims not challenged in the motion."); *Shah v. KIK Int'l LLC*, 2007 WL 1876449, at *1 (N.D. Ind. June 26, 2007).

# FACTUAL BACKGROUND

Nearly 40 years ago, in 1988, IHB entered into the Car Leasing Agreement 4223-83 ("Master Lease") with non-party General Electric Railcar Services Corporation, leasing fifty-two railcars. ECF No. 1 ("Compl.") ¶¶ 2, 7. The railcars were not new at the time the Master Lease was executed.

**Proposal Matrix**

| Opt # | Car Description | Monthly Rental Rate | Term (Months) | # of Cars | Lease Type | New Cars | Delivery Schedule Weeks |
|-------|----------------|---------------------|---------------|-----------|------------|----------|-------------------------|
| 1 | Equip Gond 100T 42-48 with cover | $435.00 | 120 | Up to 53 cars | Net | No | 10 - 12 |

\* Rental Rate is in US Dollars

ECF No. 1-2, Ex. B at 2 (describing the leased railcars and designating "No" for "New Cars").

Between 2004 and 2015, IHB entered into several riders and amendments to the Master Lease. *See* Compl. ¶¶ 8-10. In 2019, IHB entered into a Notice and Acknowledgment with non-party PNC Equipment Finance, LLC, which made certain provisions of the Master Lease inapplicable and added provisions regarding the maintenance and return of the hoods, covers and related lading devices installed on the railcars ("Covers"). Compl. ¶ 11. In 2023, Plaintiff alleges that it became the owner of the leased railcars. *Id.* ¶ 12.

The Lease[2] expired, as scheduled, on August 31, 2024. *Id.* ¶ 13. While acknowledging that "[t]he commodity transported in the Cars is coils of rolled steel,"(*id*. ¶ 33) and that the railcars have been transporting rolled steel day in and day out for almost forty years, Plaintiff claims that the railcars exhibited excessive wear. On this overarching premise, Plaintiff asserts claims for "breach of contract" (Count I), "equitable estoppel" (Count II), "unjust enrichment" (Count III),

---

[2] "Lease" refers to the Master Lease plus all lease riders, amendments, notices, and acknowledgments and any other document given in connection therewith.

"intentional misrepresentation" (Count IV), "breach of statutory duty under Article 2A of the UCC" (Count V), and "conversion" (Count VI).

## LEGAL STANDARDS

"A motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may be raised by any party or by the court *sua sponte.*" *See Masterspas, Inc. v. Master Pools & Spas, LLC*, No. 08 CV 74, 2008 WL 2705177, at *2 (N. D. Ind. July 8, 2008) ("The possible absence of subject-matter jurisdiction is an issue that the court should raise on its own motion."). Standing is a threshold jurisdictional requirement that "derives from the Constitution's limit on federal courts' authority to resolve 'cases' and 'controversies.'" *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citing U.S. Const. art. III, § 2, cl. 1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added). Where the court's jurisdiction is challenged as a factual matter, "the party invoking the jurisdiction bears the burden of supporting its jurisdictional allegations by 'competent proof,'" establishing jurisdiction by the "preponderance of the evidence or proof to a reasonable probability." *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) (internal citation and quotation marks omitted).

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where, however, a party alleges fraud, it must do more. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) does not govern only claims of fraud; it applies to all allegations and averments of fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507 (citation omitted).

Rule 12(f) authorizes a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are appropriate to "remove unnecessary clutter" from the pleadings. *Heller Fin., Inc., v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989). This includes by striking duplicative claims. *See, e.g.*, *Boeschen v. Transport*, No. 16-cv-0455, 2016 WL 4617364, at \*3 (S.D. Ill. Sept. 16, 2015) (striking causes of action that "are duplicative and irrelevant"); *see also Brownlee v. Catholic Charities of the Archdiocese of Chicago*, No. 16-CV-00665, 2017 WL 770997, at \*4-5 (N.D. Ill. Feb. 28, 2017) (striking claims that "wholly duplicate facts and legal theories pleaded in other counts of the complaint").

## ARGUMENT[3]

Plaintiff's Complaint flunks the Constitutional threshold requirement to demonstrate jurisdiction to proceed in federal court because it does not establish diversity of citizenship or Plaintiff's own standing to sue. The Complaint is therefore fatally flawed.

Even were the Complaint properly before this Court, Plaintiff's attempt to restate its straightforward—though woefully misguided—breach of contract claim into tort claims is deficient from start to finish. The *Moorman* doctrine bars this tactic; it says that when a party seeks to recover for a claimed breach of contract, it can do so only through a breach of contract claim. Perhaps in effort to overcome the *Moorman* doctrine, Plaintiff brings two claims that do not exist. The law also does not permit this. Nor does the law allow a party to redundantly litigate the same claim repackaged over and over. Counts II through VI should be dismissed or stricken because they state no plausible claim for relief.

### I. This Court Lacks Subject Matter Jurisdiction

### a. Plaintiff Fails to Demonstrate Article III Standing

For this Court to have jurisdiction to hear Plaintiff's claims, Amergin Rail 2023-1 must have standing to bring them. "To establish Article III standing, plaintiffs must show they have suffered '(1) a concrete and particularized injury in fact (2) that is fairly traceable to the challenged action of the defendant, and that is (3) likely to be redressed by a favorable judicial decision.'" *Gaylor v. Mnuchin*, 919 F.3d 420, 425–26 (7th Cir. 2019) (quoting *Freedom from*

---

[3] Plaintiff's Complaint does not address any choice of law issues but cites to Illinois statutes. *See, e.g.*, Compl. ¶85 (citing to 810 ILCS 5/2A-523). While the Lease includes a choice of law clause stating the agreements shall be governed by the law of the State of Illinois, those choice of law clauses to do not specifically address the law applicable to tort claims separate from the agreements. *See* Compl. Ex. 1 at 4, ECF No. 1-5. This, of course, is because the Lease provides the sole authority for recovery in the event of a breach. Thus, even though relevant events occurred in both Illinois and Indiana, IHB relies on Illinois law, but reserves the right to challenge the applicable law later, if necessary.

*Religion Foundation, Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014)). The plaintiff has the burden of establishing these elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561(1992). "If standing is challenged as a factual matter, the plaintiff must come forward with 'competent proof'—that is a showing by a preponderance of the evidence—that standing exists." *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996)). If a court finds that the plaintiff does not have standing to raise its claims, then the court cannot consider the merits of the claims. *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016).

A plaintiff asserting a breach of contract claim must allege four elements, "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent and Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004). An enforceable contract imposes duties on the parties to the contract per its terms. *Id.* The only parties that may bring a breach of contract claim under a contract are those that have signed the contract at issue. *Id. See also NHI-2, LLC v. Wright Prop. Mgmt., Inc.,* No. 15 C 7913, 2018 WL 1138542, at *4 (N.D. Ill. Mar. 2, 2018) ("Plaintiff is not a party to the contract and therefore cannot assert a breach of contract claim against defendants. As such, plaintiff fails to demonstrate that it has suffered an injury in fact and therefore fails to meet the constitutional requirements of standing."). Plaintiff Amergin Rail 2023-1 lacks standing for this same reason: Its claim rests entirely on its purported ownership of the decades-old railcars at issue. *See generally* Compl. To prevail on that claim, however, Plaintiff must actually own the railcars covered by the Lease.

In an attempt to demonstrate ownership, Plaintiff attaches to the Complaint a Notice and Acknowledgment of Assignment ("NOA"), Exhibit F, and a "Closing Date Notice," Exhibit G.

But neither instrument demonstrates *Plaintiff's* ownership of the railcars. Exhibit F, in fact, makes no mention of Plaintiff Amergin Rail 2023-1 at all. Instead, the NOA names a *different* company and states that "*Amergin Asset Management, LLC* . . . shall purchase and assume all right, title, interest and obligations (arising from and after the sale and assignment) of Lessor in and to the Lease[.]'" ECF No. 1-6, Ex. F at 2 (emphasis added). The NOA defines that transaction as the "Sale and Assignment." *Id.* Plaintiff Amergin Rail 2023-1 LLC, however, is not Amergin Asset Management, LLC, which Plaintiff alleges to be a non-party to this case. *See* Compl. ¶ 3 ("Non-party Amergin Asset Management, LLC, a Delaware limited liability company, acted as the servicer for the Cars under the Lease since the Cars were acquired by Plaintiff on July 31, 2023[.]").

While Exhibit G at least *mentions* Plaintiff, it is no more helpful to establish Plaintiff's standing. That agreement states that the "Sale and Assignment" "as defined in the NOA" closed on July 31, 2023. *See* ECF No. 1-7, Ex. G at 2. Again, "Sale and Assignment" is defined as *Amergin Asset Management, LLC's* purchase of the rights and obligations of the Lease—not Plaintiff's. ECF No. 1-6, Ex. F at 2. Plaintiff, moreover, does not attach any documents to demonstrate this July 31, 2023 "closing."

Plaintiff has not demonstrated it owns the railcars or that it has standing to assert the claims it seeks to assert. Instead, it apparently expects the Court to take it at its word—even in the face of inconsistent documents. The party invoking federal jurisdiction bears the burden of establishing [the standing] elements[,] . . . [and] each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Edgewood Manor Apart. Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 771 (7th Cir. 2013) (quoting *Lujan,* 504 U.S. at

561 (citations omitted)). Plaintiff's unsupported allegations are not enough. The Court should dismiss Plaintiff's claims for lack of standing.

### b. Plaintiff Fails to Establish Diversity Jurisdiction

To bring a claim in federal court on the basis of 28 U.S.C. § 1332(a)(1), a plaintiff must demonstrate, with competent proof, that there is complete diversity of citizenship among the parties. *See Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). As has been observed many times in the Seventh Circuit, the citizenship of a limited liability company (LLC) "for purposes of . . . diversity jurisdiction is the citizenship of its *members*." *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (emphasis added). "As such, the Court must be advised of the *identity* and citizenship of each *member* of an LLC for purposes of diversity jurisdiction." *O'Dell v. Speedway LLC*, No. 23-cv-00474, 2023 WL 7554031, at *1 (N.D. Ind. Nov. 14, 2023) (emphasis added); *see also Guar. Nat'l Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 59 (7th Cir. 1996) (explaining that the court would "need to know the *name* and citizenship(s)" of each partner of a partnership for diversity jurisdiction purposes) (emphasis added). To establish diversity jurisdiction, "the citizenship of unincorporated associations *must be traced through however many layers of partners or members there may be.*" *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002) (emphasis added); accord, *Hart v. Terminix Int'l*, 336 F.3d 541, 543 (7th Cir. 2003); *see also City of East St. Louis, Illinois v. Netflix, Inc.*, 83 F.4th 1066, 1070 (7th Cir. 2023). The Seventh Circuit has "held repeatedly that there's no such thing as a [state name here] partnership or LLC, that only the partners' or members' citizenships matter, and that their identities and citizenships must be *revealed.*" *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 829 (7th Cir. 2020). Courts "do not blithely accept assurances along the lines of 'no one on our side is a citizen of the opposing litigant's state.'" *Id.* Absent identifying all of its members,

Plaintiff's "[a]llegations that unnamed members are citizens of certain states are not sufficient to establish diversity jurisdiction." *Easte of Logan v. Kevin McIsaac Servs. LLC*, No. 24-cv-00434, 2024 WL 2845933, at *1 (S.D. Ind. June 5, 2024).

Plaintiff's Complaint fails on this ground. Plaintiff alleges that it "is a Delaware limited liability company" of which AAM Series, LLC, Series 1.1 Rail and Domestic Intermodal Assets Holding Company ("AAM") is the sole member. Compl. ¶ 1. It then, appropriately, alleges AAM's sole member, "AAM Series 1.1 Rail and Domestic Intermodal Feeder, LLC," ("AAM Feeder") and its citizenship. *Id.* The Complaint fails the next required step—asserting the citizenship of AAM Feeder's members. The Complaint describes AAM Feeder's membership generically as four unnamed Delaware LLCs which, in turn, are owned by another unnamed Delaware corporation. *Id.* This is insufficient to demonstrate diversity jurisdiction. All members' citizenship (and their members' citizenship) must be pleaded.

Plaintiff has failed to properly allege diversity of citizenship under 28 U.S.C. § 1332(a)(1), and the Complaint should be dismissed.

## II. The *Moorman* Doctrine Bars Plaintiff's Conversion Claim

Even if this Court had the subject matter jurisdiction to decide Plaintiff's claims, the *Moorman* doctrine would bar Plaintiff's conversion claim because Plaintiff seeks to recover purely economic losses arising solely from a contract.[4] The *Moorman* doctrine "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012); *see also Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 812 (7th Cir. 2018) (the *Moorman* doctrine generally bars tort liability

---

[4] Under Indiana law, Plaintiff's claim for conversion would also fail because "Indiana does not allow claims for conversion in contract disputes." *Galveston, LLC v. Morris Invest, LLC*, No. 19-cv-02676, 2020 WL 5798160, at *6 (S.D. Ind. Sept. 29, 2020*) see also*, *Indianapolis-Marion County Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729-31 (Ind. 2010).

"for purely economic losses . . . where [the parties] have already ordered their duties, rights, and remedies by contract."). Economic loss means "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982). This is precisely the basis of Plaintiff's claims here.

Thus the *Moorman* doctrine bars Plaintiff's conversion claim because it is wholly a regurgitation of Plaintiff's breach of contract claim. *See* Section VI. It alleges no tort committed outside of the Lease. Both the conversion and breach of contract claims concern Plaintiff's allegation that upon the Lease's termination or the alleged default of the Lease by IHB, Plaintiff had the "absolute and unconditional right to the immediate possession of the Cars" and that IHB breached the relevant Lease provisions when it "unilaterally scrapped the four Scrapped Cars in spite of repeated verbal and written directions not to do so from Lessor and in violation of the Lease." Compl. ¶¶ 94, 97 (citing to §6(B)(c) of Lease Rider No. 11). Indeed, "[a] conversion claim may not proceed where the duty to the plaintiff arises from the contract." *Kravetz v. Bridge to Life*, No. 16 CV 9194, 2017 WL 4074016, at *3 (N.D. Ill. 2017).

Courts routinely dismiss conversion claims like Plaintiff's. *See, e.g.*, *ACW Flex Pack LLC v. Wrobel*, No. 22-cv-6858, 2023 WL 4762596, at *15 (N.D. Ill. July 26, 2023) ("the *Moorman* doctrine applies to the conversion claims because the underlying duties stemmed from the contractual relationships between" the parties); *see also Meadoworks, LLC v. Linear Mold & Eng'g, LLC*, No. 19-CV-7896, 2020 WL 4194211, at *4 (N.D. Ill. July 21, 2020) (dismissing conversion claim because "Meadoworks' conversion claim attempts to do exactly what *Moorman* prohibits by bringing a tort claim for purely economic losses arising out of an alleged breach of contract."). This Court should do the same here.

**III. Plaintiff's UCC Claim Does Not Exist—It Is a Remedy Provision, Not a Cause of Action**

Plaintiff alleges that IHB breached unspecified 'statutory duties' under Article 2A of the Uniform Commercial Code ("UCC"). *See* Compl. ¶¶ 84-91. But Plaintiff never identifies what statutory duty IHB allegedly breached—nor could it. The UCC provisions Plaintiff cites do not impose independent statutory duties; they simply establish the remedial framework available to a lessor upon a lessee's default. In other words, these provisions describe what remedies Plaintiff may pursue *if* IHB breached the Lease—they do not create a separate cause of action for "breach of statutory duty."

Tellingly, Plaintiff's allegations here focus on Plaintiff's rights and remedies in response to the alleged breach, rather than on the alleged breach of any statutory duty by IHB. For instance, Plaintiff alleges that it had "a right to take possession of the cars" (Compl. ¶ 86), a "right to dispose of the cars" (Compl. ¶87), that it was "entitled to … damages" (Compl. ¶ 88, *see also* Compl. ¶ 89), and that it was "entitled to the value of the cars" (Compl. ¶ 90). Even if these provisions somehow impose a duty on IHB, Plaintiff never alleges *how* that duty, as one separate from its other claims, was breached. Because Plaintiff's UCC Article 2A claim is not actually a cause of action, it should be stricken from the Complaint. *See* Fed. R. Civ. P. 12(f) (allowing a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter"); *see also F.D.I.C. v. Parzygnat*, No. 10 C 7038, 2011 WL 3704731, at *6 (N.D. Ill. Aug. 23, 2011) (striking claims that were "not an independent cause of action" but a "theory of liability").

**IV. Plaintiff's Equitable Estoppel "Claim" Fails Because it is a Defense, Not a Claim**

Plaintiff's claim for equitable estoppel is not a valid claim at all, but rather, a defense. Under Illinois law, "equitable estoppel is an affirmative defense that prevents a party from

asserting a particular claim, *not a cause of action*[.]" *Telebrands Corp. v. My Pillow*, *Inc.*, No. 18-CV-06318, 2021 WL 4147695, at \*2 (N.D. Ill. Sept. 13, 2021) (emphasis added). *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 526 (Ill. 2009) ("[P]romissory estoppel has specifically been distinguished from equitable estoppel because the latter 'is *available only as a defense*, while promissory estoppel can be used as the basis of a cause of action for damages.'") (quoting 28 Am. Jur. 2d *Estoppel & Waiver* § 35, at 465 (2000) (emphasis added)); *see also Carcharadon, LLC v. Ascend Robotics, LLC*, No. 21 C 2890, 2022 WL 3908585, at \*1 (N.D. Ill. Aug. 29, 2022).

Count II should be dismissed because it wrongfully attempts to convert an affirmative defense into a cause of action. *See Carcharadon, LLC*, 2022 WL 3908585, at \*1  ("[T]he Court dismisses the equitable estoppel claim because it is not an independent cause of action.").

### V. Plaintiff's Unjust Enrichment Claim is Not Viable in the Alternative

Plaintiff's unjust enrichment claim fails because it does not alternatively allege liability against IHB *outside of the contract*; it asserts that Plaintiff is entitled to unjust enrichment damages precisely because it has a contract—both overtly and in incorporating by reference its breach of contract allegations into its unjust enrichment claim. The law does not allow this.

Under Illinois law, unjust enrichment "is an equitable remedy" and "is only available when there is no adequate remedy at law." *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004). "Where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Id.* "[W]hile a plaintiff may plead breach of contract in one count and unjust enrichment . . . in others, it may not include allegations of an express contract which governs the relationship of the parties, in the count[] for unjust enrichment[.]" *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005) (internal

quotation marks omitted); *see also The Sharrow Grp. v. Zausa Dev. Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (Dec. 3, 2004 N.D. Ill.) ("Under Illinois law, promissory estoppel and unjust enrichment are unavailable where the parties have entered into an express contract."); *see also BioUrja Renewables, LLC v. Gojo Indus., Inc.*, No. 23-cv-1280, 2024 WL 891807, at *5 (C.D. Ill. Jan. 26, 2024) ("While plaintiffs are allowed to plead legal theories in the alternative, a plaintiff may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel.") (internal quotation marks and citation omitted).

While purporting to allege unjust enrichment "in the alternative," Plaintiff bases its unjust enrichment claim on the Master Lease. Plaintiff alleges that it is the express contract where IHB made false representations (Compl. ¶ 73), that the benefit IHB obtained was its continuation of the express contract (Compl. ¶¶ 74, 75), and that it was the continued existence of the express contract that harmed Plaintiff (Compl. ¶ 76). Rather than alleging IHB wrongfully benefitted based on any conduct *outside* the contractual relationship, Plaintiff instead claims that IHB failed to comply with its Lease obligations and thus "unjustly retained a benefit" from the Lease. Compl. ¶¶ 74-75. In other words, Plaintiff's unjust enrichment claim is nothing more than a repackaging of its breach of contract claim, not a valid alternatively-pleaded claim.

And if there *were* any doubt, it is removed when Plaintiff "restates and re-alleges Paragraphs 1 through 70" of its Complaint, including every allegation contained in the count for breach of contract. *Id.* ¶ 71. This unequivocally—and impermissibly—ties Plaintiff's unjust enrichment claim to its breach of contract claim. *See Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 993 (N.D. Ill. 2010) (dismissing unjust enrichment claim where "the unjust enrichment claim expressly incorporates Plaintiffs' contractual allegations" by "incorporating 'all other

14

paragraphs'") (quoting the complaint); *see also Morsberger v. ATI Holdings, LLC*, No. 22 C 1181, 2023 WL 2711754, at *12 (N.D. Ill. Mar. 30, 2023) ("Plaintiffs' equitable claims fail" because "Plaintiffs re-allege and  incorporate  by  reference  the allegations contained  in  paragraphs  1 through 118 of [their] Complaint"); *see also Bunzl Retail Servs., LLC v. Mid Atl. Med. Servs.*, *LLC*, No. 21 C 3761, 2022 WL 294751, at *4, *7 (N.D. Ill. Feb. 1, 2022) (dismissing equitable claims governed by Illinois law because the complaint "incorporate[d] its express contract allegations into the unjust enrichment and money had and received counts"); *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 877 (7th Cir. 2022) (41 F. (even if inadvertent, a party's incorporating claims of a contract by reference is a "pleading error" that "prevents their unjust enrichment claim from going forward"); *see also Thorogood v. Sears, Roebuck and Co.*, No. 06 C 1999, 2006 WL 3302640, at *5 (N.D. Ill. Nov. 9, 2006) (dismissing "[b]ecause the unjust enrichment claim incorporates by reference the allegations of a valid contract").

At bottom, Plaintiff's unjust enrichment claim depends on allegations that an express contract—the Lease—governs the parties' relationship. As a result, the unjust enrichment claim is properly dismissed. *See, e.g.*, *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("[T]he inconsistent-pleading option in this context is limited. A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is not an express contract, then the defendant is liable for unjustly enriching himself at my expense."); *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021) (affirming dismissal of unjust enrichment claim where "the businesses premise their unjust enrichment theory on the validity of their insurance contracts"); *see also Duffy*, 722 F. Supp. 2d at 993  (dismissing claim for unjust enrichment where "the unjust enrichment claim expressly incorporates Plaintiffs' contractual allegations.").

**VI. Plaintiff's Tort Claims Are Impermissibly Duplicative**

Just like unjust enrichment, each of Plaintiff's other (non-contract) claims are duplicative of its actual breach of contract claim. Plaintiff is not permitted to assert duplicate claims which merely re-allege the same facts and claimed injury over and over. *Miller v. Klingsporn*, 262 N.E.3d 147, 158 (Ill. App. Ct. 2025) ("Although a plaintiff is generally allowed to plead claims in the alternative, duplicate claims are not permitted in the same complaint."); *see also Neade v. Portes*, 739 N.E.2d 496, 503 (Ill. 2000); *see also Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (holding that a plaintiff alleging fraud in a contractual setting must be able to "identify any fraudulent act distinct from the alleged breach of contract."); *see also GuideOne Mut. Ins. Co. v. Good Shepherd Lutheran Church*, No. 20 CV 4730, 2021 WL 3077658, at *5 (N.D. Ill. July 21, 2021) ("The church's fraud claims are premised on the language of the policy, duplicate Good Shepherd's breach of contract claim, and cannot form the basis for a fraud action."). As explained in *Automobili Lamborghini Am. LLC v. Gold Coast Exotic Imports, LLC*, the "paradigmatic example of such a claim . . . is where plaintiff claims that the defendant fraudulently promised to fulfill some contractual term, while also suing the defendant for breach of that contractual term." No. 24 C 00162, 2024 WL 4367795, at *4 (N.D. Ill. Sept. 30, 2024). So too here.

Here, Plaintiff realleges its contract breach claim again and again, simply relabeling it as three separate causes of action. The asserted facts are the same. The alleged damages are the same. The underlying conduct is the same. The three duplicative claims should be dismissed or stricken.

**Equitable Estoppel.** Plaintiff alleges that IHB made false certifications or misrepresented facts in the Amergin Notice. Compl. ¶¶ 63-64. These are *exactly the same* allegations Plaintiff already makes in its breach of contract claim. *See* Compl. ¶¶ 46-51. There, Plaintiff alleges that

IHB was in default of the Amergin notice based on the representations made in it, which breached the Lease. *See* Compl. ¶¶ 46-51, 61. Further, the injury and damages alleged for the equitable estoppel claim are *identical* to the injury and damages alleged for the breach of contract claim. Compare:

> $1,405,491.85, consisting of approximately $305,474.16 for unpaid rent, plus $37,921.00 for storage charges, plus $727,157.97 for repair charges (inclusive of restenciling fees), plus at least $60,262.72 for freight charges, plus approximately $274,676.00, representing the fair market value of the Scrapped Cars. Compl. ¶ 70 (equitable estoppel).

> $1,405,491.85, consisting of approximately $305,474.16 for unpaid rent, plus $37,921.00 for storage charges, plus $727,157.97 for repair charges (inclusive of restenciling fees), plus at least $60,262.72 for freight charges, plus approximately $274,676.00, representing the fair market value of the Scrapped Cars. Compl. ¶ 61 (breach of contract).

Because all of the facts on which Plaintiff relies for its equitable estoppel claim are contained within the breach of contract claim, and the alleged injury and damages are identical, the claim for equitable estoppel should be dismissed as duplicative. *See, e.g.*, *Kurtz v. Toepper*, No. 11 VC 4738, 2012 WL 33012, at *1 (N.D. Ill. Jan. 6, 2012) (dismissing duplicative claims where "claims all involve the same set of operative facts" and "and the damages sought are identical across the claims").

**Intentional misrepresentation.** Plaintiff's claim for intentional misrepresentation is similarly duplicative of the breach of contract claim (and thus also duplicative of the equitable estoppel claim). Plaintiff relies on identical facts and circumstances here as for its breach of contract claim. Plaintiff again alleges that IHB made misrepresentations in the Amergin Notice and that Plaintiff was harmed by the misrepresentations. *See* Compl. ¶¶ 78-82. And Plaintiff again alleges *exactly the same* purported injury and damages in both the breach of contract and equitable estoppel claims. *See* Compl. ¶ 83 (alleged damages for intentional misrepresentation are "$1,405,491.85, consisting of approximately $305,474.16 for unpaid rent, plus $37,921.00 for

storage charges, plus $727,157.97 for repair charges (inclusive of restenciling fees), plus at least $60,262.72 for freight charges, plus approximately $274,676.00 representing the fair market value of the Scrapped Cars"); *compare* Compl. ¶ 61(alleged damages for breach of contract totaling $1,405,491.85) and Compl. ¶ 70 (alleged damages for equitable estoppel totaling $1,405,491.85).

As a result, the claim for intentional misrepresentation should be dismissed as improperly duplicative of the breach of contract claim. *See, e.g.*, *Greenberger ,* 631 F.3d at 401 (affirming dismissal of fraud claim where plaintiff "failed to identify any fraudulent act distinct from the alleged breach of contract"); *Mandel Metals, Inc. v. Walker Grp. Holdings*, No. 14 CV 8493, 2015 WL 3962005, at *7 (N.D. Ill. June 26, 2015) ("This renders the claim deficient, as a fraud claim cannot simply be a reformulation of a breach of contract claim.").

**Conversion.** Plaintiff's conversion claim is based on the allegation that the "Lease does not authorize [IHB] to scrap the Cars." Compl. ¶ 93. Once again, these identical allegations form Plaintiff's breach of contract claim where it alleges that IHB defaulted under the Lease by scrapping four railcars. *See* Compl. ¶¶ 36-40. Plaintiff even goes so far as to simply copy and paste some of the same paragraphs from its breach of contract claim into its conversion claim. *Compare* Compl. ¶ 36 ("The lease provides no right . . . type and capacity . . .'") *with* Compl. ¶ 96 ("The lease provides no right . . . type and capacity . . .'"). Other paragraphs are mirrored with only minor word changes. *Compare* Compl. ¶ 37 ("*Lessee* unilaterally scrapped the four Scrapped Cars . . .") (emphasis added) *with* Compl. ¶ 97 ("*Railroad* unilaterally scrapped the four Scrapped Cars . . .") (emphasis added).

Simply changing the phrasing of how Plaintiff refers to IHB, without changing the substance of the allegations, does not render the conversion claim separate and distinct from the breach of contract claim. The basis for this claim, the alleged injury and demanded damages are

identical to those for the scrapped railcars in the breach of contract claim (as in the equitable estoppel and intentional misrepresentation claims). *Compare* Compl. ¶ 98 ("Amergin Rail 2023-1 suffered damages as a result of Lessee's conversion, such as approximately $274,676.00, representing the fair market value of the four Cars[.]") *with* Compl. ¶ 61 ("As a direct and proximate result of Lessee's breach of the Lease, Amergin Rail 2023-1 has suffered damages in the amount of . . . approximately $274,676.00, representing the fair market value of the Scrapped Cars[.]").

Because Plaintiff has failed to plead underlying conduct, damages, or injury as bases for its equitable estoppel, intentional misrepresentation, and conversion claims which are separate and distinct from the bases for its breach of contract claim, and because all of those claims rely on the identical operative facts and allegations, the claims for equitable estoppel, intentional misrepresentation, and conversion should be dismissed as impermissibly duplicative. The law is clear in the "Seventh Circuit[, such] duplicative claims should be dismissed." *Kurtz*, 2012 WL 33012, at *1 (citing to *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004)); *see also* Fed. R. Civ. P. 12(f) (allowing court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter").

### VII. Plaintiff's Intentional Misrepresentation Claim Fails to Satisfy Rule 9(b)

Plaintiff's claim for intentional misrepresentation should also be dismissed because it fails to satisfy the requirements in Federal Rule of Civil Procedure 9(b). And because Rule 9(b) applies to "'averments of fraud,' not claims of fraud," the portion of Plaintiff's breach of contract claim duplicative of the intentional misrepresentation claim should also be dismissed for failing to satisfy Rule 9(b). *Borsellino*, 477 F.3d at 507.

For both its intentional misrepresentation claim and the aspect of the breach of contract claim premised on "false certification," Plaintiff alleges that IHB intentionally misrepresented in the Amergin Notice that the railcars were being operated in accordance with the Lease. Compl. ¶¶ 46-51, 77-81. These allegations are both subject to Rule 9(b) because they allege that IHB made false representations to Plaintiff in the NOA, so they amount to "averments of fraud." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1039 (N.D. Ill. 2007) (a "heightened pleading standard applies to all 'averments of fraud,' Fed.R.Civ.P. 9(b), regardless of whether those averments pertain to a 'cause of action' for fraud."). Therefore, Plaintiff must allege "who, what, when, where, and how" of these allegedly false representations. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (citation omitted). But Plaintiff Amergin Rail 2023-1 is *not* a party to the NOA and only its affiliate is Amergin Asset Management, LLC is even mentioned (and is not even a signatory to the document). *See* ECF No. 1-6, Ex. F at 2, 4. Nowhere in its Complaint does Plaintiff allege *when* any of the representations in the NOA were made to it, or by *whom*, *where* that would have occurred, or *how* that happened.

Similarly, Plaintiff seeks to recover on the supposedly "false" representation that the decades-old railcars were being used in accordance with the Lease. Plaintiff apparently infers this based upon the railcars' condition *after* the Lease ended, therefore concluding that the railcars must not have been used as intended. Compl. ¶ 47 ("Lessee was in default of its certification because the Cars were not in the condition required by the terms of the Lease nor were the Cars being operated in accordance with the Lease."); *id.* ¶ 79. Plaintiff fails to delineate the who, what, where, when or how of its false representation claim. Such conclusory and speculative allegations fail to satisfy Rule 9(b)'s specificity requirements. *See Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 853 (N.D. Ill. 2021*)* ("Claims for intentional misrepresentation must satisfy the requirements

of Federal Rule of Civil Procedure 9(b) . . . [a]s a practical matter, this means that the plaintiff must identify the 'who, what, when, where, and how' of the alleged fraud.") (citation omitted).

## CONCLUSION

For all of these reasons, Defendant Indiana Harbor Belt Railroad Company respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety, or in the alternative, strike or dismiss Counts II through VI as not legally viable and duplicative of Plaintiff's breach of contract claim.

Dated: February 10, 2026

Respectfully Submitted,

Indiana Harbor Belt Railway Company

By: /s/ David C. Jensen
*One of the attorneys for defendant,*
*Indiana Harbor Belt Railway Company*

David C. Jensen, #4893-45
John P. Twohy, 19603-53
EICHHORN & EICHHORN, LLP
2929 Carlson Drive, Suite 100
Hammond, Indiana 46323
Tel. (219) 931-0560
djensen@eichhorn-law.com
jtwohy@eichhorn-law.com

Rebecca B. Chaney (*pro hac vice* forthcoming)
Marie S. Dennis (*pro hac vice* forthcoming)
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Tel. (202) 624-2500
rchaney@crowell.com
mdennis@crowell.com

21

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                    /s/  David C. Jensen