**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| AMERGIN RAIL 2023-1, LLC | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:25-cv-00568-AZ |
| v. | ) | |
| | ) | |
| INDIANA HARBOR BELT RAILROAD COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS AND STRIKE**

NOW COMES Plaintiff, Amergin Rail 2023-1, LLC ("**Plaintiff," "Amergin Rail 2023-1," or "Lessor"**) by and through its counsel, and for its Response in Opposition to the Motion to Dismiss Complaint in its entirety, or in the alternative, strike or dismiss Counts II through VI of Plaintiff's Complaint (the "Motion") filed by Indiana Harbor Belt Railroad Company (**"Defendant," "Railroad" or "Lessee"**) states as follows:

**INTRODUCTION**

Defendant's Motion attempts to avoid liability for its wrongful conduct and for its breach of contract. As set forth in the Complaint, Defendant deliberately destroyed multiple pieces of property which belonged to Plaintiff; ignored clear contractual obligations to maintain the Cars and Covers, use the Cars as permitted by the Lease, and to return the Cars and Covers in the condition required under the Lease. In addition, Defendant provided false representations regarding the condition of the Cars and its operation of the Cars before Plaintiff became the Lessor. Plaintiff relied upon the Defendant's false representations in purchasing the Cars.

What Defendant describes as Plaintiff's "threshold Constitutional impediments" are easily overcome. As to the issue of standing, Plaintiff is the proper party to institute this action. A simple

reading of the Complaint and the Exhibits establishes that Plaintiff is the owner of the Cars and Lessor. No other reading of the Exhibits is possible despite Defendant's selective or distorted reading of documents. As to diversity jurisdiction, although the pleading is sufficient, a more detailed presentation of facts establishing diversity jurisdiction is in the attached declaration of Attorney Jerrold Rosen who is COO and General Counsel of Plaintiff's servicer and manager, **Exhibit 1** hereto (the "Declaration").

Defendant's assertion that Plaintiff's Count II (Equitable Estoppel) fails because it is an affirmative defense, ignores the authority which holds otherwise. Specifically, Defendant relies on a 2009 Illinois Supreme Court decision (and district court cases that rely on it), where equitable estoppel was only addressed in passing. Plaintiff's position that Equitable Estoppel is an independent cause of action is supported by recent Illinois Appellate jurisprudence: the First District in 2012 and the Second District in 2024. *See infra.*

Defendant's Motion is premised on rewriting the Federal Rule of Civil Procedure which expressly permit plaintiffs to plead alternative theories of relief, and multiple claims, even if the theories are inconsistent. Fed. R. Civ. P. 8(d)(2) and (3). Contrary to Defendant's argument, Plaintiff is allowed to plead its Unjust Enrichment Claim (Count III), in the alternative to its Breach of Contract claim (Count I), and has done so consistent with case authority as discussed *infra*.

Plaintiff's other claims - Intentional Misrepresentation (Count IV), Breach of Statutory Duties Imposed Under Article 2A of the Uniform Commercial Code (Count V), and Conversion of the Scrapped Cars (Count VI) are not duplicative of its Breach of Contract claim. To wit, Plaintiff's Intentional Misrepresentation Count is not duplicative because its focus is on the false representations that Defendant made *before* the Plaintiff proceeded with the purchase of the Cars.

Defendant's argument that Plaintiff's Count V, brought under Article 2A of the Uniform Commercial Code is duplicative of the Breach of Contract claim, ignores authority that statutory claims under the UCC Article 2A are not duplicative of breach of contract claims.

Plaintiff's Conversion Count VI is not duplicative of its Breach of Contract claim because the Plaintiff's Conversion Count involves Defendant's wrongful assumption of control over and destruction of Plaintiff's property and is based, *inter alia*, on Defendant's common law duty not to convert. Plaintiff's Conversion Count will be limited to damages related to the loss of the four Scrapped Cars.

Since Plaintiff is not seeking double recovery, the Court should allow Plaintiff to proceed on all of its Counts. Notably, Defendant has yet to admit that the parties had any enforceable contract. If Defendant's reductive efforts at this juncture are allowed to succeed, and Counts II-Count VI of Plaintiff's Complaint are stricken or dismissed, such dismissal can leave Plaintiff without any recourse against Defendant, notwithstanding its misconduct, of which failure to pay for use of the Cars is just the tip of the iceberg.

Plaintiff has properly pled all the elements of each of its six counts: (1) Breach of Contract; (2) Equitable Estoppel; (3) in the Alternative to Breach of Contract, Unjust Enrichment; (4) Intentional Misrepresentation; (5) Breach of Statutory Duties Imposed under Article 2A of the UCC, and (6) Conversion of the Scrapped Cars. Therefore, Defendant's Motion should be denied.

<u>**FACT ALLEGATIONS IN THE COMPLAINT**</u>

The history of the Cars subject to the suit predates Plaintiff's purchase of the Cars in 2023. The owner of the Cars changes a few times prior to Plaintiff owning the Cars.

On or about June 23, 1988, Defendant entered into Car Leasing Agreement 4223-83 (the "**Master Lease**") with non-party General Electric Railcar Services Corporation (referred to in the

Master Lease as "GERSCO"). *See* Complaint, ¶7 and **Exhibit A**. (The "**Lease**" refers to the Master Lease plus all lease riders, amendments, notices and acknowledgments and any other document given in connection therewith.) "A complaint is deemed to include documents incorporated in it by reference." *Strauch v. Northwest Health-LaPorte*, No. 3:21-CV-00174, 2021 U.S. Dist. LEXIS 226648, at \*6 (N.D. Ind. Nov. 22, 2021).

On or about June 28, 2023, Defendant executed a Notice and Acknowledgment of Assignment dated June 8, 2023 (the "**Amergin Notice**"), in which, *inter alia*, Defendant acknowledged and agreed that an entity called Amergin Asset Management, LLC will be the buyer, i.e., the owner of the Cars. *See* **Exhibit F** to the Complaint. Defendant made a series of certifications relating to the Lease and the Cars. *See* Complaint, ¶12 and **Exhibit F**. The Amergin Notice states that "Lessor and Buyer anticipate that the Sale and Assignment will close on or before June 30, 2023 (the actual date of closing, the "Closing Date"). *See* **Exhibit F**. Notably, the Amergin Notice unequivocally stated that the anticipated Buyer was acting in reliance on the Defendant's certification in advance of the Closing Date for a sale. *Id*.

The series of certifications made by Defendant included: "The Equipment … is in the possession of Lessee, is in the condition required by the terms of the Lease and is being operated by Lessee in accordance with the Lease Documents." *See* Complaint, ¶78 and **Exhibit F**, at §3. Defendant knew that its statements were untrue. By virtue of using the Cars, Defendant knew that as set forth in detail, *supra*, (i) the Cars were not in the condition required by the terms of the Lease, and (ii) Lessee was not operating the Cars in accordance with the Lease. *See* Complaint, ¶79. But for these pre-closing date certifications, the subject Cars would not have been purchased by Plaintiff or the price paid by Plaintiff would have been lower. *See* Complaint, ¶¶80-81.

4

Next, a Closing Date Notice dated August 1, 2023 was executed and delivered to Defendant. *See* **Exhibit G** to the Complaint and Complaint, ¶12. The Closing Date Notice clearly identifies Plaintiff, Amergin Rail 2023-1, as the buyer of the Cars. *See* **Exhibit G**. The Closing Date Notice, also provides that the Sale and Assignment to Plaintiff closed on July 31, 2023. *See* **Exhibit G**.

The Lease's expiration date was August 31, 2024. *See* Complaint, ¶13, and **Exhibit E**, Annex B and **Exhibit F**, Annex B. During the months leading to the end of the lease term, Defendant engaged in a variety of stalling tactics that hindered Amergin Rail 2023-1's ability to inspect the Cars. *See* Complaint, ¶14. The Cars were not made available to Plaintiff for a thorough inspection until October 22, 2024 and October 23, 2024. *Id.* at ¶15. Further, without any authority and over Plaintiff's repeated objections Defendant scrapped four of Plaintiff's Cars. *Id.* at ¶16. On information and belief, Defendant retained proceeds generated from scrapping the Scrapped Cars. *See* Complaint, ¶16.

## **LEGAL STANDARD**

"When considering a Rule 12(b)(1) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff." *Metroplex Communications, Inc. v. Meta Platforms, Inc.*, No. 22-cv-1455-SMY, 2024 U.S. Dist. LEXIS 38622, at \*4 (S.D. Ill. Mar. 5, 2024).

"When considering a 12(b)(1) motion, [t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *McGrath v. Dunecrest Condominium Ass'n*, No. 3:20-CV-656 JD, 2021 U.S. Dist. LEXIS 91102, at \*7 (N.D. Ind. May 13, 2021) (internal citations and quotations omitted).

"A judge reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant." *Marconi v. United States*, No. 2:20 CV 407, 2021 U.S. Dist. LEXIS 67086, at *1 (N.D. Ind. Apr. 7, 2021).

"The burden on a motion to strike is upon the moving party." *Miller v. Pam Transport, Inc.*, No. 19-cv-242-JPG-GCS, 2019 U.S. Dist. LEXIS 174577, at *5 (S.D. Ill. Oct. 8, 2019). "Courts generally do not grant motions to strike unless the defect in the pleading causes some prejudice to the party bringing the motion" *Hoffman v. Sumner*, 478 F. Supp. 2d 1024, 1028 (N.D. Ill. 2007). "[M]ere redundancy or immateriality is not enough to trigger the drastic measure of striking the pleadings or parts thereof; in addition, **the pleading must be prejudicial** to the defendant." *Humphrey v. Thind*, No. 1:25-cv-00595-ALT, 2026 LX 45895, at *3 (N.D. Ind. Jan. 12, 2026) (emphasis added). Nowhere does Defendant allege prejudice.

## ARGUMENT

This case is not a simple breach of contract case for non-payment. Before Plaintiff purchased the Cars in July 2023, Defendant used and abused the equipment, and failed to keep the equipment in proper or good condition through proper use and maintenance. *See* Complaint, ¶¶3, 52-54. In June 2023, Defendant lied about the condition of the Cars. *See* Complaint, ¶¶12, 46-51, and **Exhibit F**. Unfortunately, Plaintiff relied on the Defendant's false certifications, and went ahead with the purchase of the Cars that were not maintained properly. *See* Complaint, ¶¶80-81. In the months leading to the lease expiration, Defendant engaged in a "hide the ball" strategy, which included impeding and delaying inspection and repair efforts by the Plaintiff. *See* Complaint, ¶¶14-15. A low point of Defendant's mischief was the unauthorized unilateral destruction of the four Scrapped Cars. *See* Complaint, ¶16.

### I.    This Court Has Subject Matter Jurisdiction

### a. Plaintiff is the Owner of the Cars. Defendant's Attempts to Misinterpret the Documents or to Distort Plaintiff's Role must be Rejected.

The Court must reject Defendant's claim that Plaintiff, Amergin Rail 2023-1, lacks standing to file suit. Defendant argues that Plaintiff did not establish that it owned the Cars. The Complaint and the Exhibits clearly show that Plaintiff is the proper party.  Indeed, until its Motion, Defendant never challenged or questioned Plaintiff's ownership of the Cars or the Lease, including when Defendant was required and directed to make payments to Plaintiff (who is identified as the Buyer of the Cars). *See* Closing Date Notice, **Exhibit G**.

Again, the Closing Date Notice, **Exhibit G** to the Complaint, properly apprised Defendant of the completed Sale and Assignment to Plaintiff. The Closing Date Notice, was provided to the Defendant consistent with the requirements of the earlier Amergin Notice. *See* Complaint, ¶12 and **Exhibit F**. Contrary to Defendant's argument that "[w]hile Exhibit G [Closing Date Notice]… *mentions* Plaintiff, it is no more helpful to establish Plaintiff's standing" [Defendant's Memorandum of Law ("D's Memo"), Doc 13, at pg. 8], in fact the Closing Date Notice clearly identifies Plaintiff as the "Buyer" of the Lease, effective the "Closing Date" of July 31, 2023. The Closing Date Notice also explains Plaintiff's relationship to the previously *anticipated* buyer, Amergin Asset Management, LLC: Plaintiff is "a special purpose entity and affiliate of Amergin Asset Management, LLC." *Compare* **Exhibit F** *with* **Exhibit G**; *see also*, Complaint, ¶3.

The Complaint further explains the relationship between Plaintiff and Amergin Asset Management, LLC. *See* Complaint, ¶3: "Non-party Amergin Asset Management, LLC, a Delaware limited liability company, acted as the servicer for the Cars under the Lease since the Cars were acquired by Plaintiff on July 31, 2023, and continues to act as servicer under the Lease[.])"

Defendant accentuates the weakness of its arguments by arguing that the Plaintiff is not the proper plaintiff because in June 2023, Amergin Asset Management, LLC, was identified in the Amergin Notice, as an entity *intending* to purchase the lease from PNC Bank, National Association. *See* **Exhibit F** to the Complaint for the Amergin Notice and Complaint, ¶12. Defendant was advised that at the time of the execution of the Amergin Notice, the anticipated sale had yet to take place. *See* **Exhibit G** to the Complaint.  The actual sale from PNC Bank, National Association to Plaintiff took place on July 31, 2023, evidenced by the Closing Date Notice. *See* Complaint, ¶3 and **Exhibit G**.

In sum, Plaintiff sufficiently demonstrated that it was the buyer of the Cars, and has requisite standing to sue Defendant. Defendant's argument that "neither instrument demonstrates Plaintiff's ownership of the railcars" boldly misstates the content of the documents.  Contrary to the Defendant's clamor, Plaintiff is not required to attach additional documents, "to demonstrate this July 31, 2023 'closing.'" (D's Memo, Doc 13, at pg. 8).  *See* Complaint, ¶3 and **Exhibit G**. Under Rule 10(c) of the Federal Rules of Civil Procedure "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Also, "Rule 10(c) is permissive in nature; a plaintiff is under no obligation to attach to her complaint the documents upon which her action is based." *Hirata Corp. v. J.B. Oxford & Co*., 193 F.R.D. 589, 592 (S.D. Ind. 2000). Defendant's misguided assertions should not be entertained and its Motion to Dismiss for lack of standing should be denied.

### b.  Plaintiff Establishes Diversity Jurisdiction

As set forth in the Declaration, Amergin Rail 2023-1, LLC traces its citizenship through all levels. *See* **Exhibit 1**. Plaintiff is not a citizen of Indiana. Hence, the Court has subject matter

jurisdiction under 28 U.S.C. § 1332(a)(1)[1]. *City of East St. Louis v. Netflix, Inc*., 83 F.4th 1066, 1070 (7th Cir. 2023) ("citizenship of an LLC is the citizenship of each member-traced through as many levels as necessary until reaching a natural person or a corporation."). "To determine the citizenship of a corporation it is necessary to identify both where the corporation is incorporated and where it has its principal place of business." *Levy v. Walmart*, Inc., No. 24-CV-1667, 2026 LX 180387, at \*5 (E.D. Wis. Mar. 24, 2026).

**II. Plaintiff's Count II (Equitable Estoppel), Count III (Unjust Enrichment), Count IV (Intentional Misrepresentation), Count V (Breach of Statutory Duties Under Article 2A of the Uniform Commercial Code, and Count VI (Conversion) are Properly Alleged. Defendant's Attempt to Dismiss or Strike them Should be Denied**.

Defendant's wholesale request to Strike or Dismiss Counts II through VI misses the mark on many levels. To the extent that Defendant seeks relief under Rule 12(f)(2) on its Motion to Strike, Defendant fails to acknowledge or mention that such motions are disfavored and to succeed, a movant needs to show significant prejudice. *See Miller v. Pam Transport, Inc.,* No. 19-cv-242-JPG-GCS, 2019 U.S. Dist. LEXIS 174577, at \*5 (S.D. Ill. Oct. 8, 2019). If Defendant tries to claim prejudice in its Reply, the Court should not consider it. "It is well established that arguments raised for the first time in the reply brief are waived." *Teufel v. Northern Trust Co., No.* 14-cv-7214, 2017 U.S. Dist. LEXIS 31674, at \*6 (N.D. Ill. Mar. 6, 2017). On the other hand, a wholesale dismissal or striking of Counts II-VI can severely prejudice Plaintiff, because it risks leaving Plaintiff empty handed and without recourse against Defendant, notwithstanding Defendant's misconduct under the common law as well as under the Uniform Commercial Code.

---

[1] While Plaintiff inadvertently alleged that at the last level of membership, each of the four referenced limited liability companies are owned by a Delaware corporation, all four owners are Maryland corporations, as supported by the Declaration.

At this juncture, Defendant has not admitted that the parties have an enforceable contract, and by extension has yet to even agree upon terms and subject matter of said contract.  Defendant's "divide and conquer" legal tactic should be denied. *National City Commer. Capital Co., LLC v. Global Golf, Inc*., No. 09-CV-0307 (JFB)(AKT), 2009 U.S. Dist. LEXIS 42780, at *2-5 (E.D.N.Y. May 20, 2009):

> [I]f this Court were to find, at a later stage of this litigation, that a 'valid and enforceable' agreement governed the subject matter at issue in plaintiff's quasi-contract claim, such a claim would be barred, at least to the extent the quasi-contract claim sought recovery for benefits conferred upon defendant during the pendency of an agreement between the parties. *Id*. However, at this stage of the case, there is no basis to conclude that such claims should be dismissed as a matter of law. Although defendants assert that they will not dispute the existence of a contract with respect to this dispute, defendants have not even filed an answer yet and it is unclear whether the written contract will foreclose other alternative quasi-contract theories of liability asserted by plaintiff. Similarly, there is no basis to conclude as a matter of law at this juncture that claims of conversion or equitable estoppel must necessarily fail. In short, the claims satisfy Rule 8 and survive a motion to dismiss. *See* Fed. R. Civ. P. 8(d)... Dismissal of plaintiff's alternative theories at this stage would violate the liberal policy of Rule 8(e)(2) which allows plaintiffs wide 'latitude' in framing their right to recover.") (internal citations omitted).

Defendant's case law authority supporting its Motion to Strike is either inapposite or supports Plaintiff's position. In *Brownlee v. Catholic Charities of the Archd. of Chicago*, No. 16-CV-00665, 2017 U.S. Dist. LEXIS 27425, at *10-11 (N.D. Ill. Feb. 28, 2017), the Court struck two counts (sexual harassment and constructive discharge) that were rooted in sexual discrimination, finding them to be "truly redundant counts—those that duplicate a legal theory and add no new facts underpinning it." Here, notwithstanding some factual overlap, each of the six Counts alleges different legal theories and should not be stricken. *Direct Supply, Inc. v. Park Supply of America, Inc*., 623 F. Supp. 3d 972, 975 (E.D. Wis. 2022) (Denying defendant's motion to dismiss, motion to strike, and motion for a more definitive statement, and holding that "[e]ven assuming defendant is correct and the two counts address the same claim, plaintiffs may bring multiple legal theories to support a single claim."). Further, contrary to Defendant's argument, in

*Boeschen v. Butler Transport*, No. 16-cv-0455-MJR-SCW, 2016 U.S. Dist. LEXIS 119916, at \*6-9 (S.D. Ill. Sep. 6, 2016), the court did not strike "causes of action." Instead, the court "struck allegations against [defendant] for negligent entrustment, negligent failure to train, negligent hiring, and negligent retention" of a single count, to prevent double recovery, because by that point, the defendant had already filed its answer in which it admitted that responsibility for the actions of its employee under *respondeat superior*. Here, unlike the defendant in *Boeschen*, Defendant has yet to file its Answer and make any admissions with respect to the validity of the Lease. Additionally, here, there is no risk of a double recovery for Plaintiff's damages.

Courts in this Circuit and in this District routinely allow a plaintiff who pleads a breach of contract to simultaneously plead both quasi-contractual and tort-based counts, rejecting defendant's dismissal efforts. *Seaspine Orthopedics Corp. v. Pinnacle Healthcare, LLC*, No. 2:20 CV 323, 2021 U.S. Dist. LEXIS 184215, at \*7 (N.D. Ind. Sep. 27, 2021) (Moody, J.) ("Defendant also argues that the unjust enrichment, conversion, and theft claims should be dismissed, as plaintiffs cannot recover under those theories if they succeed on their contract claim. However, Federal Rule of Civil Procedure 8(d)(2) permits a party to plead alternative theories of relief, even if the theories are inconsistent. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Accordingly, at this stage, defendant's argument is rejected.").

Defendant's reliance on Illinois state-court pleadings standards and cases that share nothing with the case at bar, to rewrite the Federal Rules of Civil Procedure (Rule 8) must not be indulged. *Bielskis v. Louisville Ladders, Inc.*, No. 07 c 1411, 2007 U.S. Dist. LEXIS 51823, at \*3 (N.D. Ill. July 18, 2007) ("Defendant contends that a plaintiff cannot allege the same cause of action in multiple counts. The Federal Rules of Civil Procedure directly address this point, providing that '[a] party may set forth two or more statements of a claim or defense alternatively or

hypothetically, *either in one count or defense or in separate counts or defenses*.' FED. R. CIV. P. 8(e)(2) …. The Court thus must reject Defendant's argument. It is entirely consistent with the rules of pleading for a plaintiff to use four separate counts to plead four distinct theories of proof (*i.e.*, statements of a claim) of the same cause of action.") (emphasis original). *See also In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 963 (N.D. Ill. 2016) ("While Plaintiffs' unjust enrichment claim may eventually give way to Plaintiffs' breach of contract and fraud claims, Plaintiffs may plead in the alternative at this stage in the litigation.").

In *Miller v. Klingsporn*, 2025 IL App (3d) 240026, ¶ 37, 262 N.E.3d 147, one of the two state court cases cited by Defendant, the Court upheld dismissal of contract claims, finding them to be a restatement of the professional negligence claim brought against a veterinarian, because they alleged the exact same operative facts. The *Miller* case was decided under the Illinois Code of Civil Procedure and therefore has no bearing on our case. "It is well settled that a federal court sitting in diversity applies federal pleading requirements 'even when the claim pleaded arises under state rather than federal law.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services*, 536 F.3d 663, 670 (7th Cir. 2008). Hence, Defendant's reliance on Illinois' pleading standard is misplaced.

In *Neade v. Portes*, 193 Ill. 2d 433, 445, 739 N.E.2d 496, 503 (2000), the second state court case used by Defendant, the court ruled that there was no need to recognize a previously never existing new cause of action for breach of fiduciary duty against a physician when a traditional medical negligence claim sufficiently addresses the same alleged misconduct.

Not only are the claims in these two cases—*Miller* and *Neade*- factually and legally inapposite from the case here but also they are decided under Illinois state court—not federal court-- pleading standards. Further, in the case at bar each of Plaintiff's Counts relies upon different

operative facts or elements; for example, Equitable Estoppel and Intentional Misrepresentation focus on Defendant's conduct and statement *before* Plaintiff entered the contract.

### a. Plaintiff's Equitable Estoppel Can Constitute an Independent Cause of Action.

Contrary to Defendant's claim, Illinois courts often recognize that Equitable Estoppel can be an independent cause of action, not just a remedy. *Friedman & Friedman, Ltd. v. Basic*, 2012 IL App (1st) 112642-U, ¶¶ 21-22 (Rule 23):

> [T]his court has also held that equitable estoppel can be an independent cause of action, under the same theory as promissory estoppel. *Gold v. Dubish*, 193 Ill. App. 3d 339, 350-51, 549 N.E.2d 660, 140 Ill. Dec. 9 (1989). Under equitable estoppel, where a person, by his or her statements or conduct, leads a party to do something that said party would not have done but for such statements or conduct, that person will not be allowed to deny his or her words or actions to the detriment of the other party. *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313, 751 N.E.2d 1150, 256 Ill. Dec. 313 (2001).

Note that this 2012 case of *Friedman & Friedman, Ltd. v. Basic* was decided after the Illinois Supreme Court case of *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.* 233 Ill.2d 46 (2009) cited by Defendant to argue that equitable estoppel is not a cause of action. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.* is on its face not directly on point and is cursory. Further, the district court case of *Telebrands Corp. v. My Pillow, Inc.* 2021 US Dist. LEXIS 173181 (N.D. Ill. Sep. 13, 2021) cited by Defendant is not binding in determining Illinois state law to counter the informative Illinois appellate court case of *Friedman & Friedman, Ltd. v. Basic.* Simply put, *Telebrands Corp.,* if on point, is wrong on the issue here. Likewise, the district court decision in *Carcharadon, LLC v. Ascend Robotics*, LLC 2022 US Dist. LEXIS 155534 (N.D. Ill. Aug. 29, 2022) is likewise incorrect in stating that equitable estoppel is not a cause of action in Illinois. Illinois appellate case authority controls. To accentuate the correctness of Plaintiff's position, a persuasive opinion under Rule 23(e)(1) was decided *after* the federal court cases of *Telebrands Corp.* and *Carcharadon,*

*LLC* in *Bear Valley Partners v. McDonald's Corp.*, 2024 IL App (2d) 230245-U, P73, (Rule 23)

where the Illinois Appellate Court stated in 2024:

> This limitations period likewise applies to claims of equitable estoppel which, although typically raised as an affirmative defense, may also be raised as a freestanding cause of action, similar to promissory estoppel. *Gold v. Dubish*, 193 Ill. App. 3d 339, 347-48, 549 N.E.2d 660, 140 Ill. Dec. 9 (1989). *See also Friedman & Friedman, Ltd. v. Basic*, 2012 IL App (1st) 112642-U (stating that equitable estoppel is an independent cause of action brought "under the same theory as promissory estoppel").

Hence, Plaintiff's Equitable Estoppel cause of action withstands Defendant's challenge. The conduct subject to this Count II focuses on statements (certifications) which the Defendant made in the Amergin Notice (**Exhibit F**), in which the Defendant concealed and/or misrepresented facts pertaining to the condition of the Cars and Defendant's failure to operate the Cars in accordance with the Lease. Defendant falsely certified in the Amergin Notice that Defendant was complying with Lessee's obligations. Defendant misrepresented material facts to induce the sale which enabled Defendant to continue to operate the Cars, without any disruption to its operations. *See* Complaint, ¶¶ 62-70 and **Exhibit F**. Plaintiff's Equitable Estoppel Count is not duplicative of its Breach of Contract claim because it focuses on the events that took place *before* the anticipated purchase was completed. Defendant's reliance on *Kurtz v. Toepper*, No. 11 C 4738, 2012 U.S. Dist. LEXIS 1528, at *4 (N.D. Ill. Jan. 6, 2012), is also misplaced. In *Kurtz*, a plaintiff sued a defendant accountant for professional negligence, breach of fiduciary duty, and breach of contract in connection with defendant's alleged failure to provide the IRS with required documentation during a routine audit. The court dismissed breach of fiduciary duty and breach of contract claims, finding that "the claims all involve the same set of operative facts." *Id*. Aside from arising in the factually immaterial context of professional services, unlike *Kurtz*, the operative facts for the Breach of Contract claim are different from those that support Plaintiff's Equitable Estoppel claim. The Equitable Estoppel claim focuses on Defendant's misrepresentations upon which Plaintiff

relied *prior to* entering into a contract. Therefore, Count II for Equitable Estoppel should not be dismissed.

### b.   Plaintiff's Unjust Enrichment Count III is Properly Pled in the Alternative to the Breach of Contract Count.

Plaintiff conspicuously marked its Unjust Enrichment Count as pled in the alternative to the Breach of Contract claim. *See* Complaint, at pgs. 1 and 21. Defendant seeks dismissal, arguing that the Count for Unjust Enrichment depends on the allegations of express contract because the Complaint used the "restates and re-alleges" language. D's Memo, Doc 13, at pgs. 14-15. But the Breach of Contract Count does not bar the Plaintiff from asserting its Unjust Enrichment. Plaintiff's alternative theory for unjust enrichment protects the Plaintiff if the contract is found to be unenforceable at a later stage. *Aaron MacGregor & Associates, LLC v. Zhejiang Jinfei Kaida Wheels Co.*, 328 F. Supp. 3d 906, 925 (N.D. Ind. 2018) ("unjust enrichment can still coexist with Plaintiffs' breach of contract claims until such time the validity and enforceability of the contracts are determined."). *See also Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1166 (N.D. Ill. 2022). Again, at no point does the Defendant concede that the written contract is valid.

If the Lease contract is found to be ineffective, Plaintiff is entitled to compensation for Defendant's use of Plaintiff's Cars based on principles of unjust enrichment. *See* Complaint, ¶74. Defendant continued to lease, retain or use the Cars, and the rent remains unpaid. *See* Complaint, ¶¶ 74-76. Further, Plaintiff paid various third-party repair shops for repairs necessitated by damage to 48 Cars arising from Defendants' use (or abuse). *See* Complaint, ¶¶ 75-76. Those amounts remain unpaid. *See* Complaint, ¶¶72, 75-76. In addition, Plaintiff paid for storage and movement of the Cars, and was not compensated by Defendant. *See* Complaint, ¶¶ 75-76.  Defendant unjustly scrapped the four Scrapped Cars and failed to reimburse Plaintiff for that loss. *Id*. In a nutshell, Defendant retained benefits, all at Plaintiff's expense. *See* Restatement (Third) of Restitution &

Unjust Enrichment § 2 cmt. c (Am. Law Inst. 2011) ("Judicial statements to the effect that 'there can be no unjust enrichment in contract cases' can be misleading if taken casually. Restitution claims of great practical significance arise in a contractual context, but they occur at the margins, where a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations. Applied to any such circumstance, the statement that there can be no unjust enrichment in contract cases is plainly erroneous.").

Furthermore, the incorporation language of Paragraph 71 of the Complaint is consistent with acceptable pleadings standards and should not bar Count III from going forward, specifically when Count III was clearly pled in the alternative. *AIT Worldwide Logistics, Inc. v. Pacific Coast Container, Inc.*, No. 23 CV 14616, 2024 U.S. Dist. LEXIS 158635, at *17-18 ("a plaintiff may incorporate contractual allegations if the quasi-contractual claim 'is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim' … While this 'round-about way of resolving the pleading issue certainly is not a model to be emulated . . . this language is sufficient under Rule 8[.]'") (N.D. Ill. Sep. 4, 2024). Therefore, Count III should not be dismissed.

   c. **Plaintiff's Intentional Misrepresentation Count IV is not Duplicative of the Breach of Contract Count I. Defendant's Misrepresentations Predate Plaintiff's Purchase of the Lease**.

At the crux of the Intentional Misrepresentation Count are the false statements/certifications that Defendant made, relating to the condition of the Cars, and the way Defendant operated the Cars, *before* Plaintiff purchased the Cars. *See* Complaint, ¶¶ 78-83 and **Exhibits F** and **G**. This is a key factor which renders Plaintiff's Intentional Misrepresentation claim (Count IV), distinct from its Breach of Contract claim (Count I) for pleadings purposes.

In trying to sweep the Intentional Misrepresentation Count into the Breach of Contract Count, Defendant fails to recognize the key distinction on timing. *Medline Industries v. Maersk Medical*, 230 F. Supp. 2d 857, 868 (N.D. Ill. 2002) ("the fraudulent inducement claim is not based upon duties arising from the contract, as in a negligence case. Instead, the claim alleges an independent intentional tort. Although the allegedly fraudulent statements were made in the agreement, the duty that was allegedly violated did not arise from the agreement, but from tort law… the right to be free from fraudulent inducements to contract, does not arise out of a contract… Therefore, the court concludes that the economic loss doctrine does not preclude … [plaintiff's] fraudulent inducement claim."); *NewSpin Sports, Ltd. liability Co. v. Arrow Electronics, Inc*., 910 F.3d 293, 308-09 (7th Cir. 2018) ("[I]t is well established that a misrepresentation of present fact which is the inducement for a contract is collateral to said contract, and can support a separate fraud claim.") (applying New York law); *Dyson, Inc. v. Syncreon Technology (Am.), Inc*., No. 17 C 6285, 2019 U.S. Dist. LEXIS 114960, at *16-17 (N.D. Ill. July 11, 2019) ("[Defendant's] alleged fraudulent misrepresentations extend beyond an unfulfilled promise to perform its contractual obligations. [Plaintiff] contends, for example, that [Defendant] induced it to enter the contract by misrepresenting its experience in retail logistics and its existing technological capacity. Those allegedly false statements are not promises to perform obligations under the contract, and allowing [Plaintiff] to pursue a fraud claim based on those statements does not supplement its breach of contract claim 'with a redundant remedy … a jury could reasonably find that [Defendant's] statements were 'affirmative acts of misrepresentation and not a simple breach of contract.'"); *Boyd Group (U.S.) Inc. v. D'Orazio*, No. 14 CV 7751, 2015 U.S. Dist. LEXIS 70076, at *27-28 (N.D. Ill. May 29, 2015). The *Moorman* doctrine does not bar fraudulent misrepresentation claims,

*Life Spine, Inc. v. Aegis Spine, Inc*., No. 19 CV 7092, 2020 U.S. Dist. LEXIS 45741, at \*21-22 (N.D. Ill. Mar. 17, 2020).

Defendant's reliance on cases which found fraud to be duplicative of breach of contract are not applicable here because the fraudulent certifications/representations which led Plaintiff to enter the contract (*i.e.*, purchase the Lease) and are subject to the Intentional Misrepresentation Count are different and legally distinct from the Breach of Contract claim. Hence, Defendant's reliance on *Greenberger v. GEICO General Insurance Co*., 631 F.3d 392, 401 (7th Cir. 2011), is inapposite because here Defendant's deceptive conduct predates its contractual obligations to Plaintiff. In *Guideone Mut. Ins. Co. v. Good Shepherd Lutheran Church*, No. 20 CV 4730, 2021 U.S. Dist. LEXIS 135851, at \*10-11 (N.D. Ill. July 21, 2021), another case cited by Defendant, the court dismissed fraud-based counterclaims because "the church has not alleged fraud separate from the alleged breach of contract."). Again, contrary to cases relied upon by Defendant, Plaintiff here has alleged fraud separate from the alleged breach of contract. This is not a situation where the misrepresentation is Defendant's refusal to fulfill a contractual term, as Defendant claims relying on *Automobili Lamborghini America LLC. v. Gold Coast Exotic Imports, LLC*, No. 24 C 00162, 2024 U.S. Dist. LEXIS 178128, at \*13 (N.D. Ill. Sep. 30, 2024). Here, the misrepresentation is not Defendant's failure to pay Plaintiff, or properly use and maintain the Cars, but rather the false certifications regarding the Cars' condition upon which Plaintiff relied to purchase the Cars. Indeed, in *Automobili Lamborghini,* a case cited by Defendant, the court denied defendant's request to dismiss the fraud claim as being duplicative of the breach of contract claim, noting that dismissal is inappropriate "where a breach occurs and 'nonperformance is concealed under a façade of compliance with one's contractual obligations and a series of dilatory, deceptive and punitive maneuvers designed to mask that nonperformance.'" *Automobili Lamborghini*, 2024 U.S.

18

Dist. LEXIS 178128, at *14. Even Defendant's cited authority recognizes that there are circumstances in which "an insurer's [plaintiff] conduct can be the basis for both claims of fraud and breach of contract." *Guideone Mut.*, 2021 U.S. Dist. LEXIS 135851, at *10.

To the extent that Defendant seeks to strike the Intentional Misrepresentation Count for being duplicative of the Equitable Estoppel Count, such reductive efforts, at the pleadings stage contravene the Federal Rules of Civil Procedure and should be disregarded. *See e.g.*, *Carl A. Haas Auto. Imps., Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1391 (N.D. Ill. 1996) ("Both equitable estoppel and fraud are theories of recovery . . ."). "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Parties "may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). Therefore, Count IV should not be dismissed.

> **d.  Plaintiff's UCC Count V based on Defendant's Breaches of its Statutory Duties pursuant to Article 2A of the Uniform Commercial Code is an Independent Cause of Action**.

Contrary to Defendant's assertion, Courts have recognized that UCC claims can form independent causes of action. Defendant's reliance on *FDIC v. Parzygnat*, No. 10 C 7038, 2011 U.S. Dist. LEXIS 94182, at (N.D. Ill. Aug. 23, 2011), is misplaced. In *FDIC v. Parzygnat* the court addressed claims for aiding and abetting, and concert of action, arising out of the underlying torts of fraud and of tortious interference with contract. The court held that "aiding and abetting" and "concert of action" are not, as a matter of law, independent torts. By contrast, in our case no argument exists that any of Plaintiff's causes of action are not cognizable as a matter of law. Importantly, though *FDIC v. Parzygnat* is not factually on point, and even there the court denied defendant's request to strike counts for "aiding and abetting fraud" and for "concert of action to commit fraud." To the extent *FDIC v. Parzygnat* applies, it supports Plaintiff.

Courts in other states have recognized that statutory claims under UCC can coexist with breach of contract claims. In *AAF-McQuay, Inc. v. MJC, Inc*., CIVIL ACTION NO. 5:00CV00039, 2002 U.S. Dist. LEXIS 1785, at *20-21 (W.D. Va. Jan. 10, 2002), the District Court Judge rejected the Magistrate Judge's recommendation to dismiss the plaintiff common law contract claim as "surplusage," instead allowing plaintiff to proceed under both the UCC and common law contract principles). In *Gatx Corp. v. Ga. Power Co*., 674 F. Supp. 3d 1322 (N.D. Ga. 2023), the court addressed the issue of whether a claim under NY CLS UCC § 2-A-532 of the New York UCC is duplicative of a breach of contract claim. The court noted that NY CLS UCC § 2-A-532 expressly allows a lessor to recover damages under "other law" in addition to the remedies expressly provided under the UCC. The Court found this demonstrated that a claim under NY CLS UCC § 2-A-532 is not inherently duplicative of a breach of contract claim. *Gatx Corp.,* 674 F. Supp. 3d at 1355. ("Regarding whether GATX's claim under the New York UCC is duplicative of its breach of contract claim, it appears that the UCC provision at issue here expressly contemplates that a lessor may recover damages under 'other law' 'in addition to' the UCC provision. Whether GATX may in fact recover damages under New York common law and UCC law is a matter best addressed closer to trial after additional briefing by the parties."). *See also,* 810 ILCS 5/2A-532 ("In addition to any other recovery permitted by this Article or other law, the lessor may recover from the lessee an amount that will fully compensate the lessor for any loss of or damage to the lessor's residual interest in the goods caused by the default of the lessee."). Therefore, Count V should not be dismissed.

  e.   **Plaintiff's Conversion Count VI is not Barred by the *Moorman* Doctrine. Common Law Duty Prohibits Conversion[2], Irrespective of Contractual Obligations**.

---

[2] While Defendant relies on Illinois law in its Motion, Defendant reserved the right to challenge the applicable law later. D's Memo, Doc 13, at pg. 6 n.3. Plaintiff does not concede to applicability of substantive Indiana law to tort claims, and reserves the right to respond to Defendant's challenge to choice of law.

Defendant claims that Plaintiff's Conversion Count is barred under the *Moorma*n doctrine "because it is wholly a regurgitation of Plaintiff's breach of contract claim." D's Memo, Doc 13, at pg. 11. The Defendant's approach is too simplistic. First, the Conversion Count is limited to the four Scrapped Cars. Second, there is a widely recognized separate common law duty which exists outside of the contractual duty against conversion, and which is applicable here. *Dyson, Inc. v. Syncreon Technology (Am.), Inc.*, No. 17 C 6285, 2019 U.S. Dist. LEXIS 114960, at *20-21 (N.D. Ill. July 11, 2019), ("The Seventh Circuit has considered this principle in the context of a conversion claim and noted that if a defendant breached 'a common-law duty . . . that arose from a source other than the contract, the *Moorman* doctrine would not bar' the claim for conversion.") Indeed, even Defendant's cited case authority recognizes that there are specific instances where the *Moorman* doctrine does not apply to a conversion claim. A critical nuance the Defendant fails to address: "The Seventh Circuit has considered the *Moorman* doctrine in the context of a conversion claim. Basically, the applicability of the doctrine depends on the source of the duty." *ACW Flex Pack LLC v. Wrobel*, No. 22-cv-6858, 2023 LX 22750, at *34 (N.D. Ill. July 26, 2023).

In this case, there are at least two possible sources of duties not to convert: contractual (*see* Complaint, ¶¶ 93-97) and common law duty not to convert. *In re Karavidas*, 2013 IL 115767, ¶ 59, 999 N.E.2d 296 ("At common law, conversion is the 'wrongful possession or disposition of another's property as if it were one's own; an act or series of acts or willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right, whereby that other person is deprived of the use and possession of the property.' Black's Law Dictionary 381 (9th ed. 2009).")

Defendant relies upon *Kravetz v. Bridge to Life, Ltd*., No. 16 CV 9194, 2017 U.S. Dist. LEXIS 148969, at *8 (N.D. Ill. Sep. 14, 2017), to argue that "[a] conversion claim may not proceed where the duty to the plaintiff arises from the contract" but *Kravetz* is distinguishable. In *Kravetz*, one of the plaintiffs based his conversion count on "defendants' fiduciary duty to shareholders". *Id*., at *9 (N.D. Ill. Sep. 14, 2017). In ruling against him, the court noted that the plaintiff "cite[d] no case … that would support his theory." The court also noted that the sought damages were for "defendants' failure to reissue shares, not recovery of the shares (as in an action for detinue at common law)." By contrast, here, Defendant had a common law duty to return tangible goods. Further, the damages sought in the Conversion Count here are based on destruction of tangible items, namely, the four Scrapped Cars, with Plaintiff identifying each by distinct serial numbers: HKRX42003; HKRX42009; HKRX42021, and HKRX42045. *See* Complaint, ¶¶16 and 97.

Irrespective of Defendant's obligations under the Lease not to scrap Cars, Defendant was independently, as a matter of common law, obligated to return all leased Cars to Plaintiff. *See First Am Commer. Bancorp v. Interior Architects, Inc*., No. 03 CV 00638, 2004 U.S. Dist. LEXIS 17466, at *59-61 (N.D. Ill. Aug. 30, 2004) ("the Court finds that [Defendant] has breached the Agreement and is liable to [Plaintiff] both for breach of contract and for conversion"); See also *Universal Metro Asian Servs. Ass'n & Universal Indus. v. Mahmood*, 2019 Ill. Cir. LEXIS 9205, at *6 ("[T]he Court holds that the *Moorman* doctrine is inapplicable to Plaintiffs' claim for conversion. ... The very nature of a conversion claim is the loss of the right to possession of property, not due to defeated expectations of a commercial bargain, but by the intentional assumption of control over the property by a third person"); *Loman v. Freeman,* 375 Ill. App. 3d 445, 457-58, 874 N.E.2d 542, 552 (4th Dist. 2006) ("In short, '[i]f the actor exceeds the consent, it is not effective for the excess.' Restatement (Second) of Torts § 892A, at 364 (1965). Contract

22

or no contract, if one cuts, carves, lacerates, incises, or otherwise alters someone else's property except as authorized by that person, one commits a classic tort: either trespass to chattels or conversion, depending on the extent of the alteration.").

Finally, to the extent that the final "WHEREFORE clause" is seeking other categories of damages, Plaintiff submits that it should not cause the Court to dismiss and strike the Complaint, as under its Count VI, Plaintiff only seeks amounts associated with the loss of the four Scrapped Cars.  Therefore, Count VI should not be dismissed.

    **f.   Intentional Misrepresentation Count IV Meets the Pleadings Requirement of 9(b). The Court should Reject Defendant's Attempts to Create an Issue of Fact at the Pleading Stage**.

A party alleging fraud or mistake 'must state with particularity the circumstances constituting [the] fraud or mistake.' Fed. R. Civ. P. 9(b). To meet this particularity requirement, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 441-42 (7th Cir. 2011. The Seventh Circuit has warned that "courts and litigants often erroneously take an overly rigid view of the formulation" *U. S. v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) and that "[t]he precise level of particularity required under Rule 9(b) depends upon the facts of the case." *Camasta v. Jos. A Bank Clothiers, Inc*., 761 F.3d 732, 737 (7th Cir. 2014). "When the alleged misrepresentations are contained in standardized documents of a single corporate defendant, Rule 9(b) does not require that the actual author of the documents be specifically identified." *3525 North Reta, Inc. v. FDIC*, No. 10 C 3087, 2011 U.S. Dist. LEXIS 1879, at *12-13 (N.D. Ill. Jan. 6, 2011).

Defendant's insistence that the allegations relating to fraudulent certification do not meet the requisite pleading requirement is simply incorrect. *Melcher v. Cent. States Enters*., *LLC*, 2023

U.S. Dist. LEXIS 54931, at *23 (N.D. Ind. Mar. 30, 2023) (Rule 9(b) satisfied where "Plaintiff has alleged the general scheme to defraud [Defendant], the category of contracts that are the subject of the scheme (accumulator contracts), and the misrepresentations (fictitious promises to deliver grain)."). *See* Complaint, at ¶78 and **Exhibit F**. The requisite and sufficient "who" in this case is Defendant, Indiana Harbor Belt Railroad Company. The "where" is set forth in the Amergin Notice, **Exhibit F** to the Complaint. The "what" are the false certifications made by Defendant in the Amergin Notice that the Cars were "in the condition required by the terms of the Lease and … being operated by Lessee in accordance with the Lease Documents." *See* Complaint, at ¶78 and **Exhibit F**. The "when" is June 28, 2023, when Defendant executed the Amergin Notice, which took place before the July 31, 2023 Closing when Plaintiff purchased the Cars.

The "how" is Defendant falsely representing in the Amergin Notice that the Cars were "in the condition required by the terms of the Lease" when Defendant (the operator of the Cars) certainly knew that (i) the Cars were not in the condition required by the terms of the Lease, and (ii) Defendant was not operating the Cars in accordance with the Lease. This lead Plaintiff to purchase the Cars on July 31, 2023. *See* Complaint, at ¶78 and **Exhibit F**; and *see* **Exhibit G** regarding the Closing Date.

Lastly, Defendant states: "Plaintiff apparently infers [that the decades-old cars were not [sic] being used in accordance with the Lease] based upon the railcars' condition after the Lease ended[.]" D's Memo, Doc 13, at pg. 20. This is a false allegation of fact by Defendant that ignores the alleged facts. *See, e.g.,* Complaint, ¶14. In other words, Defendant strays into treating its Motion to Strike or Dismiss, as one for summary judgment, but without the support of an affidavit. "A motion to dismiss tests the sufficiency of a complaint, not the merits of a case." *Graves v. Man Group USA, Inc.*, 479 F. Supp. 2d 850, 853 (N.D. Ill. 2007). *Liqui-Box Corp. v. Scholle IPN Corp.*,

449 F. Supp. 3d 790, 800 (N.D. Ill. 2020) ("The purpose of a motion to dismiss is to test the sufficiency of the complaint, accepting all well-pleaded factual allegations as true, not to decide the merits or resolve factual disputes.") (internal quotations omitted).

## CONCLUSION

For all of these reasons, Plaintiff Amergin Rail 2023-1, LLC respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss and Strike Plaintiff's Complaint in its Entirety or in the Alternative Strike or Dismiss Counts II through VI of Plaintiff's Complaint.

Respectfully Submitted,

AMERGIN RAIL 2023-1, LLC,

By:    /s/ Kenneth D. Peters
       Kenneth D. Peters
       One of Its Attorneys

Kenneth D. Peters (IL ARDC # 6186034)
Christian J. Jorgensen (IL ARDC # 6243203)
Eleonora P. Khazanova (IL ARDC # 6293116)
**Dressler & Peters, LLC**
101 W Grand Ave, Suite 404
Chicago, IL 60654
Phone: (312) 602-7360
Fax: (312) 637-9378
Email: kpeters@dresslerpeters.com
       jorgensen@dresslerpeters.com
       ekhazanova@dresslerpeters.com

## CERTIFICATE OF SERVICE

I, Sarah Karstens, certify that on the 31st day of March, 2026, a true and complete copy of **Plaintiff's Response in Opposition to Defendant's Motion to Dismiss and Strike** and this **Certificate of Service** was served on:

David C. Jensen
John P. Twohy
Eichhorn & Eichhorn, LLP
2929 Carlson Drive, Suite 100
Hammond, IN 46323

Marie S Dennis
Rebecca B Chaney
Crowell & Moring LLP
1001 Pennsylvania Ave NW
Washington, DC 20004

via the Case Management / Electronic Case Filing (CM / ECF) system maintained by the United States District Court for the Northern District of Indiana.

By:    /s/ Sarah Karstens
       Sarah Karstens
       Paralegal
       Dressler | Peters, LLC


Kenneth D. Peters (IL ARDC # 6186034)
Christian J. Jorgensen (IL ARDC # 6243203)
Eleonora P. Khazanova (IL ARDC # 6293116)
**Dressler & Peters, LLC**
101 W Grand Ave, Suite 404
Chicago, IL 60654
Phone: (312) 602-7360
Fax: (312) 637-9378
Email: kpeters@dresslerpeters.com
       jorgensen@dresslerpeters.com
       ekhazanova@dresslerpeters.com

26