**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| AMERGIN RAIL 2023-1, LLC,<br>Plaintiff, | )<br>)<br>) |
| v. | ) Case No. 2:25-CV-00568 |
| | ) |
| INDIANA HARBOR BELT RAILROAD<br>COMPANY,<br>Defendant. | )<br>)<br>)<br>) |

**DEFENDANT INDIANA HARBOR BELT RAILROAD COMPANY'S REPLY IN**
**SUPPORT OF MOTION TO DISMISS AND STRIKE**

Plaintiff's Opposition ("Opp." ECF 26) fails to establish that Plaintiff has standing to assert claims arising from the Master Lease or to demonstrate the complete diversity of citizenship required for jurisdiction, even after being given an opportunity to do so. Despite Plaintiff's complaints, fairness is not the applicable standard; Article III standing and diversity jurisdiction are non-discretionary constitutional requirements. Plaintiff demonstrates neither. Nor are Plaintiff's non-contract claims viable, as they either do not exist or are a reiterative repackaging of its breach of contract claim. IHB's Motion to Dismiss demonstrated why each should be dismissed. Despite Plaintiff's attempts to save its claims by recharacterizing its Complaint through argument in its brief, it cannot overcome the Complaint's fundamental defects.

### I.    Plaintiff Fails to Establish Standing

Plaintiff filed this lawsuit in a U.S. federal court. The Constitution, therefore, requires Plaintiff to demonstrate its standing. Plaintiff fails to do so.

IHB's Motion demonstrated that Plaintiff brings a breach of contract action against IHB without showing its rights in the contract. Plaintiff's claims arise from IHB's 1988 lease of 52 rail cars from GE Railcar Services Corp. To have standing to assert claims relating to this Master Lease

1

or the rail cars at issue, *Plaintiff* (Amergin Rail 2023-1, LLC) must demonstrate either that it is a party to the Master Lease or that the Master Lease was assigned to *it*.

Plaintiff seeks to do so by citing documentation of a future intent to assign Plaintiff the lease. It relies on a Notice and Acknowledgement indicating that the Master Lease was assigned by Wells Fargo Rail Corp., as successor in interest to GE Railcar Services Corp., to PNC Equipment Finance, LLC in October 2019. Compl., Ex. E, ECF 1-5. But the subsequent Notice and Acknowledgement of Assignment, dating to June 2023, refers to an intended purchase and sale agreement between PNC Bank, National Association—*not* PNC Equipment Finance, LLC—and Amergin Asset Management, LLC—*not* Plaintiff—which would "sell and assign . . . all right, title, interest and obligations" of PNC Bank, N.A. to Amergin Asset Management, LLC as "Buyer." Comp., Ex. F., ECF 1-6. An August 2023 Closing Date Notice refers to Plaintiff as the "Buyer" and as "a special purpose entity and affiliate of Amergin Asset Management, LLC" but does not furnish proof of an assignment to, or purchase by, Plaintiff of the Master Lease or subject rail cars.

Plaintiff's response to the Motion adds nothing to these facts. The Court is told that "[a] simple reading of the Complaint and the Exhibits establishes that Plaintiff is the owner of the Cars and Lessor." Opp. at 1-2. But the allegations in Plaintiff's Complaint, along with Exhibits F and G (on which Plaintiff relies exclusively), do not establish that the Master Lease or subject rail cars were assigned or sold to Amergin Rail 2023-1, LLC. And to the extent that Plaintiff's breach of contract claim relies on a purported breach of the Notice and Acknowledgment of Assignment (Exhibit F)—which incorporated the Lease's Rider No. 11—Plaintiff is not even a party to that Agreement; IHB and PNC Bank are the only parties named in that document. There is no *evidentiary* showing that the Master Lease was ever assigned to Amergin Rail 2023-1, LLC, that Amergin 2023-1 has standing to make any claim under Exhibit F incorporating Rider No. 11, or

2

that Amergin Rail 2023-1, LLC purchased the rail cars. Curiously, although it has submitted an affidavit from Amergin Asset Management, LLC's COO and General Counsel, this affidavit does not address the issue of *Plaintiff's* legal relationship to the Master Lease or the rail cars.[1] The actual Assignment of Lease or Purchase Agreement from PNC Equipment Finance, LLC is not provided.

Where, as here, "standing is challenged as a factual matter, the plaintiff must come forward with 'competent proof'—that is a showing by a preponderance of the evidence—that standing exists." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)). To have standing, Amergin Rail 2023-1, LLC was required to demonstrate that the Master Lease had been assigned to it, that it had standing under Exhibit F, or that it had purchased the rail cars subject to the Lease. Plaintiff has not done so. Instead, Plaintiff argues it need not provide the Court with documentation of the closing. *See* Opp. at 8 ("Contrary to the Defendant's clamor, Plaintiff is not required to attach additional documents, 'to demonstrate this July 31, 2023 closing.'"). The failure to provide the documents on which it relies to establish standing is not "competent proof" but rather the *absence* of proof. The Complaint is thus properly dismissed on Rule 12(b)(1) grounds due to lack of standing.

## II.    Plaintiff Fails to Establish Diversity Jurisdiction

Plaintiff still fails to establish diversity jurisdiction, which likewise precludes proceeding in this Court, despite the benefit of IHB's Motion detailing the deficiencies in the Complaint's allegations and eight weeks to address them. Plaintiff relies entirely on diversity of citizenship (Compl. at 3, ¶ 5) and thus has the burden to demonstrate "complete diversity" as between itself and IHB, an Indiana corporation with its principal office in Indiana. *See* Corporate Disclosure Statement, ECF 14. "Complete diversity exists only if none of the defendants has the same

---

[1] Mr. Rosen avers that "Amergin Asset Management, LLC is Manager of the Plaintiff and acted as the servicer for the cars under the Lease subject to this suit, since the cars were acquired by Plaintiff on July 31, 2023." ECF 26-1, ¶ 18.

citizenship as any plaintiff." *City of East St. Louis v. Netflix, Inc.*, 83 F.4th 1066, 1070 (7th Cir. 2023) (citing *Strawbridge v. Curtiss*, (3 Cranch) 267 (1806)). An LLC's citizenship "for purposes of . . . diversity jurisdiction is the citizenship of its members[,]" *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998), so "the Court must be advised of the identity and citizenship of each *member* of an LLC for purposes of diversity jurisdiction." *O'Dell v. Speedway LLC*, No. 1:23-cv-00474, 2023 WL 7554031, at *1 (N.D. Ind. Nov. 14, 2023); *accord, Guar. Nat'l Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 59 (7th Cir. 1996).

Plaintiff acknowledges that "citizenship of an LLC is the citizenship of each member—traced through as many levels as necessary until reaching a natural person or a corporation." Opp. at 9 (citing *City of East St. Louis,* 83 F.4th at 1070). Perplexingly, despite this acknowledgment, it fails to make this demonstration. It points to the Declaration of Jerrold Rosen, COO and General Counsel at Amergin Asset Management, LLC. Opp. at 8; Rosen Decl. at 2, ¶ 3, ECF 26-1. Mr. Rosen tells the Court that Plaintiff—Amergin Rail 2023-1, LLC—is a Delaware LLC with the "sole" member: AAM Series, LLC, Series 1.1 Rail and Domestic Intermodal Assets Holding Company, a Delaware LLC, which also has a "sole" member, AAM Series 1.1 Rail and Domestic Intermodal Feeder, LLC, also a Delaware LLC. Rosen Decl. ¶¶ 6-8. The Declaration then lists "four Delaware limited liability companies [that] *are the members of* AAM Series 1.1 Rail and Domestic Intermodal Feeder, LLC." Rosen Decl. ¶ 9 (emphasis added). Importantly, Mr. Rosen does *not* aver that these four entities are the *only* members of AAM Series 1.1 Rail and Domestic Intermodal Feeder, LLC. The Declaration makes the same omission as to the four identified members of AAM Series 1.1 Rail and Domestic Intermodal Feeder, LLC, each of which is itself an LLC. Mr. Rosen testifies that each of these entities "is owned by" one of the "Blue Owl" corporations. Mr. Rosen does not testify that the entities are "wholly" or "solely" so-owned. This

4

is insufficient.

When determining the citizenship of an LLC, the identity and citizenship of *all its members* matters*,* including those persons or corporations who may be members of any constituent LLC. As to each member (and sub-member), Plaintiff is obliged to specify citizenship so that *Strawbridge* "complete" diversity may be assessed. This, Plaintiff fails to do. Even with a second bite at the apple, Plaintiff fails to definitively identify *all of the members* of a constituent LLC, AAM Series 1.1 Rail and Domestic Intermodal Feeder, LLC. Likewise, while specifying that the four "ORCC" / "ORTF" / "ORCIC" entities listed in ¶ 9 of the Declaration are members in AAM Series 1.1 Rail and Domestic Intermodal Feeder, LLC, Plaintiff fails to definitively identify *all members of* each of the four "ORCC" / "ORTF" / "ORCIC" entities, all of which are Delaware LLCs.

The Seventh Circuit has "held repeatedly that there's no such thing as a [state name here] partnership or LLC, that only the partners' or members' citizenships matter, and that their identities and citizenships must be *revealed*." *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 829 (7th Cir. 2020). Courts "do not blithely accept assurances along the lines of 'no one on our side is a citizen of the opposing litigant's state.'" *Id.* Without identifying all of its members, including all members of constituent LLCs "all the way down," Plaintiff's "[a]llegations that unnamed members are citizens of certain states are not sufficient to establish diversity jurisdiction." *Estate of Logan v. Kevin McIsaac Servs. LLC*, No. 1:24-cv-00434, 2024 WL 2845933, at *1 (S.D. Ind. June 5, 2024). Plaintiff fails to specify all of its constituent members, and its Complaint should be dismissed.

## III.  Plaintiff Fails to Show Certain Asserted Claims Exist or are Viable

IHB's Motion showed why Plaintiff's conversion, equitable estoppel, UCC, unjust enrichment and intentional misrepresentation claims are not legally viable. Plaintiff fails to meaningfully respond to that showing—in some cases, by offering no rebuttal to IHB's arguments.

a. **The *Moorman* Doctrine Bars Plaintiffs' Conversion Claim (Count VI)**

Plaintiff attempts to rewrite its Complaint to avoid the *Moorman* doctrine by now arguing that IHB owed a "common law duty not to convert" independent of the Lease (Opp. at 21), introducing a source of duty never alleged in the Complaint.[2] But Count VI of the Complaint is grounded entirely in the Lease: it alleges that Plaintiff is the owner "by virtue of sale and assignment" (Compl. at ¶ 93); that the "Lease does not authorize Lessee to scrap the Cars" (*id.*); and that IHB acted "in violation of the Lease" (*id.* ¶ 97). The Complaint never alleges a freestanding common law duty independent of the contract. Plaintiff cannot amend its Complaint by briefing a new legal theory based on claimed duty outside of the contract; the Complaint alleged only a *contractual* duty. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347 (7th Cir. 2012); *see also Reiter v. Noel*, No. 4:22-cv-00127-SEB-KMB, 2023 WL 5177314, at *4 (S.D. Ind. Aug. 11, 2023).

As pleaded, the *Moorman* doctrine squarely bars Plaintiff's conversion claim as the duty allegedly breached—the obligation to return the Cars—arises from the Lease. *See Kravetz v. Bridge to Life, Ltd.*, No. 16 CV 9194, 2017 WL 4074016, at *3 (N.D. Ill. Sep. 14, 2017) ("A conversion claim may not proceed where the duty to the plaintiff arises from the contract."). Plaintiff's cited authority does not compel a different result.[3] In *Dyson*, the court noted that the *Moorman* doctrine does not bar a conversion claim where the duty arose from "a source other than the contract." *Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, No. 17 C 6285, 2019 WL 3037075, at *6

---

[4] Indiana law bars the conversion claim. Mot. at 10 n.4. Plaintiff neither responds to this argument, nor makes any effort to show establish that Illinois law applies. Should the Court conclude that Indiana law governs, Plaintiff has conceded this claim. *Noble Roman's, Inc. v. Puzzles Fun Dome, Inc.*, No. 1:14–cv–01026, 2015 WL 1210969, at *3 (S.D. Ind. Mar. 16, 2015) (granting motion to dismiss where arguments were not responded to) (collecting cases).

[3] Plaintiff relies on *In re Kravidas*, which addresses a petition to review the Review Board's overturning an attorney's suspension for professional conduct violations. 999 N.E.2d 296, 299 (Ill. 2013). Neither the *Moorman* doctrine nor a contractual relationship are mentioned at all and this case is entirely irrelevant to the point at issue.

(N.D. Ill. July 11, 2019) (quoting *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 827 (7th Cir. 2018)). But here, the source of the alleged duty is the Lease itself. Absent that, Defendant had lawful possession of the Cars and no independent obligation to return them to Plaintiff. Plaintiff's own *ACW Flex Pack LLC v. Wrobel* held that the "*Moorman* doctrine applies to the conversion claims" for precisely this reason, "because the underlying duties stemmed from the contractual relationships." No. 22-cv-6858, 2023 WL 4762596, at *15 (N.D. Ill. July 26, 2023).

Plaintiff also attempts to limit its conversion damages to the four Scrapped Cars to distinguish it from its breach of contract claim and avoid the *Moorman* doctrine. Opp. at 21. But Plaintiff's breach of contract claim seeks recovery on the basis of the same four Scrapped Cars. Compl. at ¶ 61. Further, the Complaint's WHEREFORE clause seeks judgment "in the amount of not less than $1,500,000" without any limitation to the Scrapped Cars. Compl. at 27. And Count VI incorporates all 91 preceding paragraphs, including allegations of unpaid rent, repair costs, storage charges, and freight charges that have nothing to do with the Scrapped Cars. Compl. ¶ 92. Plaintiff's *post hoc* attempt to narrow its conversion claim through briefing is impermissible.

### b. Equitable Estoppel (Count II) Is Not an Independent Cause of Action

Plaintiff claims a split in authority on whether equitable estoppel is an independent cause of action (Opp. at 13), ignoring the Illinois Supreme Court's clear pronouncement that "promissory estoppel has specifically been distinguished from equitable estoppel because the latter is available only as a defense, while promissory estoppel can be used as the basis of a cause of action for damages." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 526 (Ill. 2009) (quotation omitted) (Mot. at 13). *Newton Tractor Sales* makes clear—in more than "cursory" (Opp. at 13) fashion—that equitable estoppel is available *only* as a defense. 906 N.E.2d at 526.

Plaintiff's only cited authority for this purported split is *Friedman & Friedman, Ltd. v. Basic*, No. 1–11–2642, 2012 WL 6962866, at *4 (Ill. App. Ct. Nov. 30, 2012), an unpublished

7

decision that by rule is not to be cited as persuasive authority, and *Bear Valley Partners v. McDonald's Corp.*, No. 2-23-0245, 2024 WL 2941338, at *15 (Ill. App. Ct. June 11, 2024), which relies on *Friedman*. Neither overcomes the Illinois Supreme Court's clear articulation of the law, and neither helps Plaintiff.[4] Since *Friedman*, the Illinois Supreme Court has reiterated that equitable estoppel is "used as a defense to preclude a party from denying a representation of past or existing fact." *Matthews v. Chicago Transit Auth.*, 51 N.E.3d 753, 780 n.11 (Ill. 2016).

Federal courts applying Illinois law have reached the same conclusion with near unanimity. *See Telebrands Corp. v. My Pillow, Inc.*, No. 18-CV-06318, 2021 WL 4147695, at *2 (N.D. Ill. Sept. 13, 2021) ( "the more recent caselaw holding that equitable estoppel is an affirmative defense that prevents a party from asserting a particular claim, not a cause of action, is more persuasive"); *Carcharadon, LLC v. Ascend Robotics, LLC*, No. 21 C 2890, 2022 WL 3908585, at *1 (N.D. Ill. Aug. 29, 2022) ("As the Illinois Supreme Court has explained, equitable estoppel is a defense to preclude a party from denying a representation of past or existing fact, while promissory estoppel is a cause of action for breach of a gratuitous promise of future conduct.") (citation modified).

Plaintiff disparages *Telebrands Corp.* and *Carcharadon, LLC* as simply "wrong" and "incorrect". Opp. at 13. This is *ipse dixit*—with no analysis of why these decisions were allegedly incorrect. The reasoning in *Telebrands* has been followed by numerous courts in this Circuit. *See, e.g.*, *Carcharadon, LLC* 2022 WL 3908585, at *1; *Healy v. Moderne Cap., LLC*, No. 20 C 567, 2020 WL 4464702, at *2 (N.D. Ill. Aug. 4, 2020) (finding that plaintiff's cited authority "does not suggest that equitable estoppel is an independent cause of action" and the "equitable estoppel count accordingly is dismissed"). For good reason; it is the prevailing view of Illinois law.

---

[4] *Friedman* is an unpublished appellate decision only citable "in the limited circumstances allowed under Rule 23(e)(1)," *id.* at *1, under which it, a 2012 order, may not be cited *even for persuasive purposes*. Ill. S. Ct. R. 23(e)(1). *Bear Valley* relies on *Friedman* only in dicta in opining on unrelated issues. 2024 WL 2941338, at *15.

8

Even if equitable estoppel could serve as an independent cause of action—which it cannot—and Plaintiff could recast it through its opposition—which it cannot—Plaintiff's Count II would still warrant dismissal as duplicative of the intentional misrepresentation claim. Plaintiff now claims that its equitable estoppel claim "focuses on statements (certifications) which the Defendant made in the Amergin Notice (Exhibit F), in which the Defendant concealed and/or misrepresented facts pertaining to the condition of the Cars and Defendant's failure to operate the Cars in accordance with the Lease." Opp. at 14. This is because Plaintiff alleges that IHB "falsely certified in the Amergin Notice that Defendant was complying with Lessee's obligations" and "misrepresented material facts to induce the sale." *Id.* These allegations are what constitute the intentional misrepresentation claim. *See* Compl. ¶¶ 79, 80. As the equitable estoppel claim is duplicative in seeking the same relief based on the same facts as Count IV, it is not permissible.

### c.   UCC Article 2A Claim (Count V) Is Not an Independent Cause of Action

Plaintiff's sole response to IHB's argument that Plaintiff's UCC cause of action does not exist is to argue that causes of action do exist under the UCC. Of course they do. Plaintiff misunderstands IHB's Motion. IHB does not argue that no plaintiff can ever bring any claim under the UCC; rather, IHB's Motion shows that Plaintiff seeks to bring a claim under a UCC provision that merely identifies contract damages but is not the source of any claim. Mot. at 12.

Plaintiff's Opposition relies entirely on cases from other jurisdictions, none of which establish that Article 2A of the UCC creates a "statutory duty" giving rise to a freestanding cause of action separate from breach of contract. *AAF-McQuay, Inc. v. MJC, Inc.* addressed different UCC provisions regarding warranties in the sale of goods—not at issue here. *See* No. CIV.A.5:00CV00039, 2002 WL 172442, at *6 (W.D. Va. Jan. 10, 2002). Nor did *Gatx Corp. v. Ga. Power Co.* hold that UCC Article 2A creates an independent statutory duty. 674 F. Supp. 3d 1322, 1354 (N.D. Ga. 2023). There, the plaintiff's only asserted claim was for breach of contract—there

was no other UCC claim. *See* Compl. at 11, *Gatx Corp. v. Ga. Power Co.*, 19-cv-04790 (N.D. Ga.), ECF 1. Instead, the plaintiff argued that UCC provisions applied to its contract and that "defendant is liable for the damages it caused to the Cars under New York's UCC" because "Section 2-A-532 . . . makes GPC liable for the cost of restoring GATX's 'residual interest' in the Cars." Mot. for Summ. J. at 20, *id.*, ECF 76. Article 2A of the UCC provides remedies available to a lessor upon a lessee's default, *see* 810 ILCS 5/2A-523 *et seq.*; these are remedial provisions that define damages for breach of a lease. But IHB disputes the assertion that those UCC provisions create a separate "statutory duty" independent of the contract. They do not.

### d.  Unjust Enrichment (Count III) Is Improperly Pleaded

IHB argued in its Motion that Plaintiff's unjust enrichment claim was impermissible because it is premised on the parties' contract. *See* Mot. at 13-14. Plaintiff ignores this argument, responding instead that unjust enrichment claims can coexist with breach of contract claims if validly pleaded in the alternative. Opp. at 15. They can, but not here. Plaintiff's unjust enrichment claim fails *not* because it is an alternative claim, but because it affirmatively relies on the existence of an express contract. Mot. at 13. The law prohibits this. *See BioUrja Renewables, LLC v. Gojo Indus.*, Inc., No. 23-cv-1280, 2024 WL 891807, at *5 (C.D. Ill. Jan. 26, 2024) ("While plaintiffs are allowed to plead legal theories in the alternative, a plaintiff may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel.") (citation modified). Having failed to respond, Plaintiff concedes that its unjust enrichment claim is not a proper alternative claim.

Plaintiff's unjust enrichment claim is both expressly, and by incorporation, premised on the parties' contract. Count III restates and realleges Paragraphs 1 through 70 of the Complaint (Compl. ¶ 71), including details regarding the existence, terms, and breach of the Lease. The claim alleges that "Lessee's failure to comply with its *obligations under the Lease* exacerbated the

10

deterioration of the Cars" and that "Lessor's purchase of the Cars allowed Lessee to continue leasing the Cars, without complying *with the Lease requirements*." Compl. ¶ 74, emphases added. These allegations depend on the existence of the contract and the claim thus fails under Illinois law. *BioUrja Renewables*, 2024 WL 891807, at *5. And Plaintiff's own cited authority underscores this deficiency. *See AIT Worldwide Logistics, Inc. v. Pacific Coast Container, Inc.*, No. 23 CV 14616, 2024 WL 4041323, at *7 (N.D. Ill. Sep. 4, 2024) ("[p]laintiffs may not 'incorporate by reference allegations of the existence of a valid contract between the parties [in quasi-contractual claims] because this would seek relief that Illinois does not offer'") (citation omitted).

Plaintiff's suggestion that its unjust enrichment claim is necessary because IHB "has not admitted that the parties have an enforceable contract" (Opp. at 10) is baseless; IHB does not dispute the existence of the Master Lease but rather whether *Plaintiff* is a party to it and has standing to enforce it. That is a fundamentally different issue. If Plaintiff lacks standing to enforce the contract, it equally lacks standing to assert quasi-contractual claims arising from the same relationship.[5] Count III should be dismissed.

### e.  Intentional Misrepresentation (Count IV) Is Duplicative and Barred

In an effort to save its claim, in its Opposition, Plaintiff attempts to recharacterize its intentional misrepresentation claim as focused exclusively on "the false statements/certifications that Defendant made . . . before Plaintiff purchased the Cars." Opp. at 16. Plaintiff cannot now recast its Complaint through motions briefing. *See Agnew*, 683 F.3d at 347; *see also Reiter*, 2023 WL 5177314, at *4 ("none of these allegations appears in Plaintiffs' complaint" and '[i]t is a basic

---

[5] Plaintiff's citation to *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1166 (N.D. Ill. 2022) is equally inapposite. *Rudy* arose in a consumer protection and deceptive marketing context—not a commercial lease dispute—where (unlike here) no contract existed to define the parties' obligations or remedies. *Rudy* provides no support for Plaintiff's attempt to plead unjust enrichment while simultaneously incorporating express contract allegations.

11

principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . .'") (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). Plaintiff's breach of contract claim expressly seeks recovery based on claimed misrepresentations in Exhibit F, *e.g.*, Compl. ¶¶ 48-51; its intentional misrepresentation claim is based on the same. Compl. ¶ 78.[6]

If Plaintiff's Opposition does accurately reflect the Complaint's allegations, then it also confirms that Plaintiff cannot establish a fraudulent misrepresentation claim. The elements of intentional misrepresentation are "(1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) *the plaintiff's justifiable reliance upon the truth of the statement*; and (5) damages resulting from reliance on the statement." *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Intern. Inc.*, 616 F. Supp. 2d 805, 826 (N.D. Ill. 2009). Any actionable misrepresentation must be made to the plaintiff. Yet Plaintiff concedes that it was *not a party* to the Amergin Notice. *See supra* at 2. The Amergin Notice was executed between Defendant and Amergin Asset Management, LLC, a different entity. If the certifications were made to that entity, then Plaintiff cannot establish that *it* was the party to whom the alleged misrepresentations were directed, that *it* actually relied on those representations, or that the representations were intended to induce *Plaintiff's* action. Each of these is an essential element of an intentional misrepresentation claim. *See Beaulieu v. Ashford Univ.*, 529 F.Supp.3d 834, 853 (N.D. Ill. 2021).

Plaintiff's cited authorities are inapposite because in each, the alleged fraudulent inducement was truly collateral to the contract. *See Medline Industries v. Maersk Medical*, 230

---

[6] Plaintiff incorrectly claims that it may alternatively plead its (also legally defective) equitable estoppel and misrepresentation theories. But if Count IV is *truly* limited to IHB's pre-purchase certifications, it is duplicative of Count II (Equitable Estoppel), which is premised on the identical certifications in the Amergin Notice. *Compare* Compl. ¶¶ 62-70 *with* ¶¶ 77-83. Alternative pleading under Rule 8(d) permits a party to plead inconsistent theories, but it does not permit a party to plead the same theory twice under different labels.

F.Supp.2d 857, 868 (N.D. Ill. 2002) (explaining that "the fraudulent inducement claim is not based upon duties arising from" an exclusive medical distribution contract between the seller and a middleman, but instead on an affirmatively false representation of exclusivity given by a product's developer to the middleman); *Dyson, Inc.*, 2019 WL 3037075, at *5 (finding that the "allegedly false statements [misrepresenting a party's retail experience and technological capacity were] not promises to perform obligations under the contract"). Plaintiff does not allege any duties outside of the contract; by contrast, the alleged misrepresentations—that the Cars were "in the condition required by the terms of the Lease" and were "being operated by Lessee in accordance with the Lease Documents"—rely on duties found in the contracts. Compl. ¶¶ 78-79.

### IV.    Plaintiff's Duplicative Non-Contract Claims Should Be Dismissed or Stricken

Plaintiff argues that its non-contract claims are not duplicative because each "alleges different legal theories." Opp. at 10. But Plaintiff is not pleading alterative theories based on varied facts; instead, the factual premise of Counts II through VI is the very conduct precisely covered by Count I. And each of Counts II through VI incorporates by reference every preceding paragraph of the Complaint, recites identical operative facts, and seeks identical damages—"$1,405,491.85." *Compare* Compl. ¶ 61 *with* ¶¶ 70, 76, 83, 91. Each count seeks recovery for the same *categories* of loss: unpaid rent, repair costs for the 48 Cars, storage and freight charges, and the value of the four Scrapped Cars. *Compare* Compl. ¶¶ 55-61 *with* ¶¶ 62-70, 71-76, 77-83, 84-91, 92-97. This is not "some factual overlap," as Plaintiff calls it; it is wholesale duplication of "truly redundant counts—those that duplicate a legal theory and add no new facts underpinning it." *See Brownlee v. Catholic Charities of the Archdiocese of Chi.*, No. 16-CV-00665, 2017 WL 770997, at *4 (N.D. Ill. Feb. 28, 2017); *see also Kurtz v. Toepper*, No. 11 C 4738, 2012 WL 33012, at *1 (N.D. Ill. Jan. 6, 2012) ("Claims are duplicative if they are based upon the same operative facts and allege the same injury.") (citing Fed. R. Civ. P. 12(f)). Plaintiff has simply restated and reincorporated the

13

same claim *based on the same facts* five additional times, affixed different labels, and demanded the same relief under each. This kind of redundancy is not permitted.

Likely recognizing the fallacy in its argument, Plaintiff contends that IHB's Motion to Strike fails because IHB has not alleged "significant prejudice." Opp. at 9. Rule 12(f) includes no such requirement. The cases Plaintiff cites do not hold that prejudice is a necessary element—they note only that its presence may weigh in favor of striking. Indeed, "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). So too here. The absence of prejudice does not immunize redundant pleading from the operation of Rule 12(f).

Even if prejudice were needed, requiring IHB to litigate five counts based on identical facts and seeking identical damages imposes substantial and unnecessary burdens on the parties and wastes this Court's resources. Were Counts II through VI to stand, IHB will be prejudiced by being forced to prepare duplicative dispositive motions, and defend against duplicative claims at trial, all arising from the same underlying facts and seeking identical relief. *See, e.g.*, *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F.Supp 2d 1167, 1173 (N.D. Cal. 2010).[7]

### a.  Plaintiff's Fraud Allegations Fail Under Rule 9(b)

Plaintiff's fraud-based claims fail to satisfy Rule 9(b)'s requirement that the "who, what, when, where, and how" be stated with particularity. At the threshold, Plaintiff fails to respond to IHB's argument and thus concedes that its 'false certification' claim is subject to Rule 9(b)'s heightened pleading standard. Mot. at 20; *see also Siegel v. Shell Oil Co.*, 480 F.Supp.2d 1034,

---

[7] Plaintiff argues that the Court should not consider any claim of prejudice because it is waived. Opp. at 9. This is incorrect as IHB is permitted to respond to arguments which Plaintiff raised for the first time. *See, e.g.*, *Eagle Servs. Corp. v. H20 Indus. Servs., Inc.*, 2:02CV36PRC, 2005 WL 1429279, at *1 (N.D. Ind. June 8, 2005) (explaining that "arguments . . . raised for the first time in the Defendant's Reply are addressed only because the Plaintiff raised the issue . . . in its Response" and "[i]t is logical that the Defendant addressed the Plaintiff's arguments in its Reply.").

1039 (N.D. Ill. 2007) (a "heightened pleading standard applies to all 'averments of fraud,' Fed. R. Civ. P. 9(b), regardless of whether those averments pertain to a 'cause of action' for fraud.").

Plaintiff's Opposition on this point misses the mark, failing to identify to whom Defendant allegedly made false certifications, or at least, any purportedly false certifications made to *it*. The Amergin Notice was executed between Defendant and Amergin Asset Management, LLC—not Plaintiff. Ex. F, ECF 1-6. *Plaintiff* is not a party to that instrument. For the "where," "when," and "how," Plaintiff again points only to the Amergin Notice—to which it is not a party—without any explanation of how representations made to a different entity, in a document Plaintiff did not sign, were directed to, received by, or actually relied upon by Plaintiff—an entity that did not, *arguendo*, exist as the "Buyer" until more than a month later. Plaintiff's failure to allege how representations to a different entity were communicated to or relied upon by Plaintiff is fatal to its fraud claims.

Plaintiff's Opposition also does not counter IHB's showing that Plaintiff has alleged no facts regarding the purported condition of the Cars at the time of its supposed misrepresentations. Its allegations are purely conclusory: Defendant "knew" the certifications were false "by virtue of using the Cars." Compl. ¶ 79. Plaintiff makes no factual allegation that the Cars were not in the required condition as of June 2023; it simply infers that they were in poor condition 14 months earlier because, Plaintiff claims, they were in poor condition when inspected in October 2024. *Id.* at 18. This is the kind of speculative allegation that Rule 9(b) precludes. *See, e.g.*, *Mason v. Medline Indus., Inc.*, No. 07 C 5615, 2009 WL 1438096, at *4 (N.D. Ill. May 22, 2009) ("Speculation does not satisfy Rule 9(b)'s particularity requirements."). Plaintiff's failure to allege any facts showing that Defendant knew the certifications were (supposedly) false at the time they were made is a pleading deficiency, not a factual dispute. The fraud-based allegations in Counts II and IV, as well as the 'false certification' aspect of Count I, should be dismissed.

Dated: April 21, 2026

Respectfully Submitted,

Indiana Harbor Belt Railroad Company

By: /s/ David C. Jensen
  *One of the attorneys for defendant,*
  *Indiana Harbor Belt Railroad Company*

David C. Jensen
John P. Twohy
EICHHORN & EICHHORN, LLP
2929 Carlson Drive, Suite 100
Hammond, Indiana 46323
Tel. (219) 931-0560
djensen@eichhorn-law.com
jtwohy@eichhorn-law.com

Rebecca B. Chaney (*pro hac vice*)
Marie S. Dennis (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Tel. (202) 624-2500
rchaney@crowell.com
mdennis@crowell.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


        /s/ David C. Jensen